Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:         jbrookner@grayreed.com
                   akaufman@grayreed.com
                   lwebb@grayreed.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | § § | Case No. 24-80035 (SWE) |
| Debtors. | § § § | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR
EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO AND (B) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 9:30 A.M. ON FEBRUARY 28, 2024.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON FEBRUARY 28, 2024, AT 9:30 A.M. IN EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, 14TH**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

> FLOOR, COURTROOM 3, DALLAS, TEXAS, 75242.
>
> PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.
>
> AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE EVERETT'S HOME PAGE. THE MEETING CODE IS 476 420 189. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.
>
> HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE EVERETT'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

The above-captioned debtors and debtors in possession (the "Debtors) respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1. By this motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to maintain and administer their Customer Programs (as defined herein) and honor certain prepetition obligations to customers in the ordinary course of business consistent with past practice and in the Debtors' sound business judgment and (b) granting related relief.

### Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

4875-9266-2175

**Background**

5. The Debtors operate one of the largest privately held retail consumer finance companies in the United States. Through its Cash Store® brand, the Debtors offer their customers an array of financial products and consumer-lending services, including single payment cash advances, installment cash advances and title loans. The Debtors utilize an innovative mix of financial technology (fintech) through its online customer portal and brick-and-mortar financial products and services through its 181 retail locations across Texas, Idaho and Wisconsin.

6. On February 25, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed.

7. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Karen Nicolaou, Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

3

**Description of Customer Programs**[2]

8. The Debtors have developed a variety of incentives through coupons, discounts, and referral programs to attract customers and maintain positive customer relationships. Prior to the Petition Date, in the ordinary course of the Debtors' business and as is customary in their industry, the Debtors offered and engaged in certain customer incentive programs and practices. These programs include the following: (a) a new customer coupon program (the "New Customer Coupon Program") and (b) a customer referral program (the "Friendly Referral Program" and collectively with the New Customer Coupon Program, the "Customer Programs").

9. Payments to customers pursuant to the Customer Programs are made weekly to qualifying customers. In 2023, the Debtors spent an estimated $275,000 on the New Customer Coupon Program and $350,000 on the Friendly Referral Program. The Debtors estimate that there are approximately $142,645.27 in checks issued by the Debtors to customers for the Customer Programs that are outstanding/not cleared as of the Petition Date. The life cycle of such checks is 60 days, and many of these checks are never cashed by the customer.

10. As of the Petition Date, the Debtors estimate that there are approximately $75,000 of prepetition obligations outstanding related to Customer Programs, which is broken down as follows:

| Customer Programs | Approximate Amount Owed Postpetition |
|---|---|
| New Customer Coupon Program | $30,000 |
| Friendly Referral Program | $45,000 |
| **Total** | **$75,000**[3] |

---

[2] Although the description of the Customer Programs set forth in this motion is intended to be comprehensive, the Debtors may have inadvertently omitted some of the Customer Programs. The Debtors request relief with respect to all Customer Programs, regardless of whether any individual Customer Program is specifically described herein.

[3] This is the Debtors best estimate based on current information regarding what will be owed on these Customer Programs. However, due to the seasonality and unpredictability of the Debtors' business, this amount is difficult to estimate and could increase or decrease as coupons and/or referrals are received by the Debtors.

4875-9266-2175

11. To effectuate a smooth transition into chapter 11, the Debtors must maintain customer loyalty and goodwill by continuing to honor their obligations under the Customer Programs. The Debtors have implemented each of the Customer Programs in the ordinary course of their businesses to maintain positive, productive, and profitable relationships with their customers that ultimately promote customer satisfaction, develop new customers, and ensure that the Debtors remain competitive. Specifically, the Debtors use the Customer Programs as marketing tools to develop new customers and encourage existing customers to pay off their obligations and to continue to do business with the Debtors. Failure to continue the Customer Programs, or failure by the Debtors to meet their obligations under such programs, would damage the Debtors' standing with their current and potential customers at this critical time in their operations. The success and viability of the Debtors' businesses, and ultimately the Debtors' ability to maximize the value of their assets, is dependent upon the continued patronage and loyalty of their customers. Termination of the Customer Programs or the inability to honor them postpetition would decrease the number of new and existing customers utilizing the Debtors' business. Any delay in honoring obligations to customers and third parties on account of the Customer Programs would impair customer relations, drive away valuable current and new customers, and disincentivize current customers from making timely payments on their obligations, thereby harming the Debtors' efforts to maximize the value of their assets to the benefit of all interested parties.

12. Accordingly, by this Motion, the Debtors seek authority to honor any prepetition obligations related to their Customer Programs and to continue to honor the Customer Programs and any checks issued prepetition pursuant to the same in the ordinary course of their businesses

on a postpetition basis without disruption. A description of each of the Customer Programs and estimates of the Debtors' prepetition Customer Program obligations are set forth below.

      A.      **<u>New Customer Coupon Program</u>**

13. The New Customer Coupon Program is offered to new customers who (1) visit the store website and obtains a new customer coupon code or (2) prequalify online and receive an email offer with a coupon code (the "<u>New Customer Coupon(s)</u>"). A New Customer Coupon provides a rebate off the customer's first loan payment for certain eligible loans. The Debtors send the rebate to the customer via check. Rebate eligibility differs depending on whether the customer is in Idaho, Texas, or Wisconsin.

      B.      **<u>Friendly Referral Program</u>**

14. The Friendly Referral Program is offered to all existing customers at the Idaho, Texas, and Wisconsin locations. In Wisconsin, it is also offered to non-customers. Through the Friendly Referral Program, an eligible customer receives a cash payout for each referral that meets certain criteria depending on the store's location.

**<u>Basis for Requested Relief</u>**

**I.    The Court Should Authorize the Debtors to Honor and Continue Costumer Programs.**

15. Courts in the Fifth Circuit and elsewhere have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the

Bankruptcy Code support the payment of prepetition claims outside of a confirmed chapter 11 plan.

16. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

17. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). For example, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business); *CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay prepetition claims). Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *CoServ*, 273 B.R. at 497 ("[I]t is only logical that the

bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, this Court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *Id.*

18. Here, continuing to administer the Customer Programs without interruption during the pendency of these chapter 11 cases is critical to preserve the value of the Debtors' assets by preserving customer goodwill and continuing to obtain new customers through such incentives. The commencement of the Debtors' chapter 11 cases may create apprehension on the part of current or potential customers regarding their willingness to commence or continue doing business with the Debtors. The success of the Debtors' businesses is dependent upon the Debtors' ability to attract and retain customers. Any curtailment of the Debtors' ability to continue the Customer Programs, and the resulting negative public perception, may enable the Debtors' competitors to take advantage of the Debtors' reorganization proceedings, causing substantial harm to the Debtors' businesses, their estates, and their stakeholders. Conversely, the value from continuing to comply with all obligations under the Customer Programs will inure to the benefit of the Debtors' estates and their stakeholders.

19. Courts in this jurisdiction have granted similar relief where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases. *See, e.g.*, *Ebix, Inc., et al.*, Case No. 23-80004 (SWE) (Bankr. N.D. Tex. Dec. 19, 2023); *In re Impel Pharm. Inc., et al.*, Case No. 23-80016 (SGJ) (Bankr. N.D. Tex. Jan. 11, 2024); *In re Tuesday Morning Corp.*, et al., Case No. 23-90001 (ELM) (Bankr. Feb. 17, 2023); *Studio Movie Grill Holdings, LLC*, No. 20-32622

8

4875-9266-2175

(SGJ) (Bankr. N.D. Tex. Nov. 19, 2020); *In re TriVascular Sales LLC*, No. 20-31840 (SGJ) (Bankr. N.D. Tex. July 7, 2020).[4]

20. Accordingly, the Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs warrants the authority to honor the Customer Programs and any prepetition obligations relating thereto and therefore respectfully request the authority to continue the Customer Programs and honor prepetition commitments related thereto in the ordinary course of the Debtors' businesses.

**II.    Processing of Checks and Electronic Fund Transfers Should Be Authorized.**

21. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash. In addition, under the Debtors' existing cash management system, the Debtors can readily identify requests relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that such requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

<u>**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**</u>

22. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

**Reservation of Rights**

23. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the requested relief, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

24. The Debtors will provide notice of this Motion to the following parties or their counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the proposed lender(s) under

4875-9266-2175

the proposed debtor in possession credit facility; (d) the lenders under the Debtors' prepetition term loan agreement; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; (g) the state attorneys general for states in which the Debtors conduct business; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 25th day of February, 2024.

**GRAY REED**

By: */s/ Lydia R. Webb*
Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
*Proposed Counsel to the Debtors
and Debtors in Possession*

**Certificate of Service**

I certify that on February 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Lydia R. Webb*
Lydia R. Webb

4875-9266-2175

**<u>Exhibit A</u>**

**Proposed Order**

12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | § § § | Case No. 24-80035 (SWE) |
| | § § | (Joint Administration Requested) |
| Debtors. | § § | **Re: Docket No.** ___ |

**ORDER APPROVING MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR
EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO AND (B) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor(s) and debtor(s) in possession (the "Debtor(s)") for entry of an order (this "Order"): (a) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4875-9266-2175

thereto, and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and the record of the hearing on such Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized, but not directed, to continue to administer the Customer Programs in the ordinary course and to honor any prepetition obligations related to the Customer Programs, and to modify, replace, or terminate any Customer Program in the ordinary course of business.

3. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or

2

4875-9266-2175

admission that any particular claim is of a type specified or defined in this Order or the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

4. Notwithstanding anything to the contrary in this Order, any payment or action taken by any of the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, any orders entered by the Court approving the Debtors' use of cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (the "DIP Orders"). To the extent there is any inconsistency between the terms of any DIP Orders, on the one hand, and this Order, on the other, the terms of the DIP Orders shall control.

5. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether such checks or other requests were submitted prior to, or after, the Petition

3

4875-9266-2175

Date, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

6. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

7. Nothing contained in the Motion or this Order is intended or should be construed to create an administrative priority claim on account of any of the Customer Programs.

8. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

12. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # END OF ORDER # # #

4875-9266-2175

Submitted by:

Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Lydia R. Webb
Texas Bar No. 24083758
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:     (214) 954-4135
Facsimile:      (214) 953-1332
Email:            jbrookner@grayreed.com
                      akaufman@grayreed.com
                      lwebb@grayreed.com

*Proposed Counsel to the Debtors and Debtors in Possession*