

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 29, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | § | Case No. 24-80035 (SWE) |
|  | § |  |
|  | § | (Jointly Administered) |
| Debtors. | § |  |
|  | § |  |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d),

364(e), 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002,

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

4892-2687-9913.3

4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Section D of the Procedures for Complex Cases in the Northern District of Texas (the

"Complex Case Procedures") for entry of an interim order (this "Interim DIP Order") and

subsequently, a final order (the "Final DIP Order", and together with the Interim DIP Order, the

"DIP Orders"):

A. Authorizing the Debtors to use the cash collateral (as defined Bankruptcy Code section 363(a), "Cash Collateral") of the Prepetition Secured Lender (as defined below), in accordance with the terms and conditions set forth in the Term Sheet (defined below), this Interim DIP Order and in accordance with the Approved Budget (defined below);

B. Authorizing the Debtors to grant adequate protection to the Prepetition Secured Lender on account of the use of its Prepetition Secured Lender Collateral (defined below), including Cash Collateral, and with respect to any postpetition Diminution in Value (defined below) of the Prepetition Secured Lender Collateral, including Cash Collateral;

C. Authorizing the Debtors, as borrowers, to enter into a senior secured postpetition financing facility (the "DIP Facility") consisting of a superpriority debtor in possession credit facility pursuant to the terms and conditions of that certain Secured Debtor-in-Possession Credit Facility and Use of Cash Collateral Term Sheet (as amended or modified from time to time, the "Term Sheet") among the Debtors, Nehimba Holdings, LLC (the "DIP Lender") and the Prepetition Secured Lender attached to this Interim DIP Order as **Exhibit 1**, and which shall consist of a superpriority priming line of credit and term loan facility in the aggregate principal amount of up to $7.0 million from the DIP Lender as follows[3]:

    i. Interim Approval. From the date of the Interim DIP Order until the date a Final DIP Order is entered (the "Interim Period"), approval to draw DIP Loans not to exceed $2.0 million (minus a 3% original issue discount on such amount), subject to compliance with the terms, conditions, and covenants described in the Term Sheet, the Interim DIP Order, and the Approved Budget; and

    ii. Final Approval. Subject to and upon entry of the Final DIP Order, approval to draw DIP Loans up to an additional principal amount not to exceed $5.0 million (minus a 3% original issue discount on such amount), such that the total aggregate principal amount of all DIP Loans on a final basis does not exceed $7.0 million, subject to compliance with the terms, conditions and

---

[3] All amounts at any time outstanding under the DIP Facility are referred to as the "DIP Loans."

4892-2687-9913.3

covenants described in the DIP Loan Documents (defined below), any Final DIP Order and the Approved Budget;

D.      Authorizing the Debtors to execute and enter into the Term Sheet and any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other documents reasonably required by the DIP Lender that are consistent with the Term Sheet and subject to review and approval by the Prepetition Secured Lender (collectively, and together with the DIP Orders, the "DIP Loan Documents" and all obligations and indebtedness of any of the Debtors to the DIP Lender under the DIP Loan Documents and the DIP Loans collectively being the "DIP Obligations") and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Loan Documents, including, but not limited to, granting or perfecting liens or security interests by any of the Debtors in favor of and for the benefit of the DIP Lender on account of the DIP Facility;

E.      Authorizing and directing for the Debtors to use the proceeds of the DIP Facility as expressly provided in the DIP Loan Documents and in accordance with the Approved Budget;

F.      Authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the Term Sheet and the DIP Loan Documents as such become earned, due and payable, including, but not limited to, the fees and costs of the DIP Lender's professionals, advisors, and consultants (collectively, the "DIP Lender Reimbursements"), in addition to paying professional fees and other costs, expenses and amounts to the Prepetition Secured Lender as part of the adequate protection to be granted to the Prepetition Secured Lender;

G.      Granting to the DIP Lender allowed superpriority claims, subject to the Carve Out and the Cash Collateral Diminution in Value Claims (defined below), pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the Debtors;

H.      Granting to the DIP Lender (a) liens on all prepetition and postpetition property of the Debtors and their respective estates and the proceeds thereof pursuant to section 364(c)(2) of the Bankruptcy Code including—subject to and effective upon entry of the Final DIP Order, and as a "last look" in the event the DIP Lender is not otherwise repaid in full—any Avoidance Action Proceeds (as defined below), (b) priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Debtors' estates and all proceeds thereof, in each case of (a) and (b), subject to the Carve Out and Cash Collateral Diminution in Value Claims and with the relative priorities set forth in this Interim DIP Order;

I.      Waiving (a) any equitable doctrine of marshaling, except as provided herein and (b) the Debtors' right to surcharge the DIP Collateral and the Prepetition Secured

3

Lender Collateral pursuant to section 506(c) of the Bankruptcy Code, upon entry of any Final DIP Order;

J.      Authorizing the DIP Lender to terminate (a) all commitments to extend credit under the DIP Facility, and (b) to terminate the Debtors' sale, use, or lease of cash collateral or the proceeds of the DIP Facility, each upon the occurrence and continuance of an Event of Default (as defined below);

K.      Modifying the automatic stay of Bankruptcy Code section 362 (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the Interim DIP Order;

L.      Approving a waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness of this Interim DIP Order;

M.      Scheduling an interim hearing (the "Interim Hearing") on the Motion;

N.      Scheduling a final hearing (the "Final Hearing") such that the Final DIP Order is entered no later than twenty five (25) calendar days after the Petition Date to consider final approval of the DIP Facility; and

O.      Granting such other and further relief as is just and proper.

and this Court having considered the Motion, the exhibits attached thereto, the DIP Loan Documents, and the *Declaration of Karen G. Nicolaou* in support of the Motion (the "Nicolaou Declaration"), the evidence submitted, and the record made at the Interim Hearing held before this Court on February 29, 2024; and due, proper and sufficient notice of the Motion, having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d) and 9014, and the local rules, procedures and orders of the Court; and the Interim Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates (as defined under Bankruptcy Code section 541, the "Estates"), and otherwise is fair and reasonable and in the best interests of the Debtors, their Estates, and their creditors and other constituents, and is essential for the continued operation of the Debtors'

4

business; and after due deliberation and consideration, and good and sufficient cause appearing

therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      *Petition Date*. On February 25, 2024 (the "Petition Date"), each of the Debtors filed

a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing

these chapter 11 cases (these "Chapter 11 Cases"). On February 29, 2024, this Court entered an

order approving the joint administration of these Chapter 11 Cases. The Debtors are continuing to

operate their business and manage their affairs as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of

unsecured creditors ("Committee") has been appointed in these Chapter 11 Cases.

B.      *Jurisdiction and Venue*. This Court has jurisdiction, pursuant to 28 U.S.C. §§

157(b) and 1334, over these Chapter 11 Cases, the Motion, the parties, and the Debtors' property.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for these Chapter 11 Cases and

proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The

statutory bases for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363, 364,

503, and 507, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the Complex Case

Procedures.

C.      *Debtors' Stipulations.* Without prejudice to the rights of any party in interest (but

subject in all respects to the limitations set forth in Paragraphs 6, 31, and 32 herein), the Debtors

admit, stipulate, acknowledge and agree (the "Debtors' Stipulations") that:

> i.   Prepetition Secured Lender: Third Coast Bank, SSB, in its capacity
>      as Lender (the "Prepetition Secured Lender") and Debtor
>      Cottonwood Financial Ltd., as borrower, are parties to that certain

Loan Agreement, dated as of December 9, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified, the "<u>Prepetition Secured Lender Loan Agreement</u>"), providing for a loan in the aggregate principal amount of $25 million. The Prepetition Secured Lender Loan Agreement and any related collateral and loan documents, guarantees, security agreements, pledge agreements, mortgages, deeds of trust and any other documents or instruments whatsoever executed by any of the Debtors in favor of the Prepetition Secured Lender are collectively referred to herein as the "<u>Prepetition Secured Lender Loan Documents</u>" and all Obligations (as defined in the Prepetition Secured Lender Loan Documents) therein are referred to as the "<u>Prepetition Secured Lender Loan</u>"). Payment of the Prepetition Secured Lender Loan is guaranteed by Cottonwood Financial Texas, LLC and Cottonwood Financial Administrative Services, LLC (together with Cottonwood Financial Ltd., the "<u>Loan Debtors</u>"). Each of the Prepetition Secured Lender Loan Documents is valid, binding and enforceable in accordance with its terms.

ii. As of the Petition Date, the outstanding aggregate principal and interest due under the Prepetition Secured Lender Loan Documents is $26,653,286.61, plus any and all obligations and indebtedness of any kind, including interest (including default interest), fees, costs, expenses, charges, and indemnities in connection with the

Prepetition Secured Lender Loan or the Prepetition Secured Lender Loan Documents (the "<u>Prepetition Secured Lender Claim</u>" or the "<u>Prepetition Secured Lender Loan Obligations</u>").

iii. The Prepetition Secured Lender Loan Obligations constitute legal, valid, and binding obligations of the Loan Debtors. No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or priority of, the Prepetition Secured Lender Loan Obligations exist. No portion of the Prepetition Secured Lender Loan Obligations is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (equitable, contractual or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity. The Prepetition Secured Lender Loan Documents are valid and enforceable. The Prepetition Secured Lender Loan Obligations constitute allowed claims against the Loan Debtors. As of the Petition Date, the Debtors or their estates have no claim or cause of action against the Prepetition Secured Lender or its agents, in such capacities, whether arising under applicable state, federal or foreign law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or

7

in connection with any of the Prepetition Secured Lender Loan
Documents (or any transactions contemplated thereunder), the
Prepetition Secured Lender Loan Obligations or the Prepetition
Secured Lender Liens (defined below).

iv.  As of the Petition Date, the Prepetition Secured Lender Obligations
are secured by first-priority, fully-perfected liens on and security
interests (the "Prepetition Secured Lender Liens") in and to all assets
and property (real and personal, tangible and intangible), whether
now owned by or owing to, or hereafter acquired by, or arising in
favor of the Loan Debtors, as further described and defined in the
Prepetition Secured Lender Loan Documents, which includes (but
is not limited to) all: (a) accounts, (b) accessions, (c) assigned
contracts, (d) chattel paper, (e) collateral records, (f) commercial tort
claims, (g) commodity accounts, (h) commodity contracts, (i)
deposit accounts, (j) documents, (k) equipment, (l) financial assets,
(m) fixtures, (n) general intangibles, (o) goods (including furniture),
(p) insurance, (q) intellectual property, (r) instruments, (s)
inventory, (t) investment property, (u) letters of credit, (v) letter-of-
credit rights, (w) licenses (x) money, (y) payment intangibles, (z)
permits, (aa) pledged equity interests, (ab) securities, (ac) securities
accounts, (ad) security entitlements, (ae) software, (af) supporting
obligations, (ag) pledged debt and (ah) proceeds (collectively, the
"Prepetition Secured Lender Collateral").  The Prepetition Secured

4892-2687-9913.3

Lender Liens are valid, binding, enforceable, non-avoidable, and properly perfected, and were senior in priority over any and all other liens on the Prepetition Secured Lender Collateral.

v.  None of the Prepetition Secured Lender or its agents control the Debtors or their properties or operations, have authority to determine the manner in which any of the Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect thereto, or in connection with, related to or arising from this Interim DIP Order or the Prepetition Secured Lender Loan Documents.

vi.  That certain Subordinated Debt Note, dated as of July 19, 2022 sets forth subordination and other provisions governing the relative priorities and rights with respect to the Prepetition Secured Lender and Trevor Lee Ahlberg 1997 Trust, which (a) agreement shall remain in full force and effect, (b) shall continue to govern the relative priorities, rights and remedies of the parties (or assignees) thereto, and (c) shall not be amended, altered or modified by the terms of this Interim DIP Order or the documents referenced herein, in connection with confirmation of a plan of reorganization, if any, or liquidation in these Chapter 11 Cases.  Any distribution or treatment of the Prepetition Secured Lender Obligation and the subordinated claims contemplated herein shall remain subject to the

4892-2687-9913.3

agreement and any other intercreditor or subordination provisions related thereto.

D.    *Findings Regarding DIP Facility and the Use of Cash Collateral.*

i.    <u>Request for Postpetition Financing and Use of Cash</u>. The Debtors seek authority to enter into and perform under the DIP Loan Documents. The DIP Lender shall have no obligation to make loans or advances except pursuant to the terms and conditions set forth herein and in the other DIP Loan Documents and no obligation to waive any conditions required thereunder. The Debtors also seek authority to use cash on the terms described herein, and in accordance with the Approved Budget, which shall be subject to Permitted Variances (as defined below) to administer their Chapter 11 Cases and fund their operations.

ii.    <u>Priming of the Prepetition Liens</u>. The Debtors seek to prime the liens of the Prepetition Secured Lender as part of this Interim DIP Order.

iii.    <u>Need for Postpetition Financing and Use of Cash</u>. The Debtors do not have sufficient liquidity to operate their business in the ordinary course or to pursue either a sale or a stand-alone restructuring without the financing requested in the Motion. The Debtors' ability to maintain business relationships with vendors, suppliers, and customers, to pay their employees, pay certain fees and expenses as set forth herein, and to otherwise fund their operations is essential to the Debtors' continued viability as the Debtors seek to maximize and preserve the value of their respective Estates for the benefit of all stakeholders. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Facility with the DIP Lender and to use cash as set forth in this Interim DIP Order and the DIP Loan Documents is vital to the Debtors' preservation and maintenance of going concern value. If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they, and their Estates, will suffer immediate and

irreparable harm. Accordingly, the Debtors have an immediate need to obtain the DIP Loans and to use cash.

iv.     <u>No Credit Available on More Favorable Terms</u>. As set forth in the Nicolaou Declaration and as demonstrated at the Interim Hearing, given their current financial condition, financing arrangements, and capital structure, the Debtors have been unable to procure the necessary financing from sources other than the DIP Lender on terms more favorable than those set forth in the Term Sheet. The Debtors have been unable to reasonably obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in Bankruptcy Code sections 503(b), 507(a), and 507(b); (b) secured only by a lien on property of the Debtors and their Estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their Estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting to the DIP Lender: (x) automatically perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after- acquired assets with the priorities set forth herein; (y) superpriority claims and liens; and (z) the other protections to the extent set forth in this Interim DIP Order. After considering all reasonable alternatives, the Debtors have concluded, in the exercise of their sound and reasonable business judgment, that the DIP Facility, including, without limitation, the DIP Loans, represents the best financing available to them at this time.

v.     <u>Use of Proceeds of the DIP Facility and Cash Collateral</u>. As a condition to entry into the DIP Loan Documents, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed, that proceeds of the DIP Facility

and Cash Collateral shall be used in accordance with the terms of this Interim DIP Order, the DIP

Loan Documents, and the Approved Budget (which shall be subject to Permitted Variances), solely

to (i) provide working capital and for general corporate purposes of the Debtors during the Chapter

11 Cases; (ii) pay interest, fees, costs and expenses related to the DIP Facility; (iii) pay the fees,

costs and expenses of the estate professionals retained in the Chapter 11 Cases as set forth in the

Approved Budget and approved by the Bankruptcy Court; (iv) pay the DIP Lender

Reimbursements and the Prepetition Secured Lender Reimbursements (as defined below); (v)

make all permitted payments of costs of administration of the Chapter 11 Cases; (vi) pay the

Adequate Protection Payments (as defined below) to the Prepetition Secured Lender and

reasonable and documented post-petition fees and expenses of the Prepetition Secured Lender, as

discussed below; and (vii) pay such prepetition expenses as are consented to by the DIP Lender

and the Prepetition Secured Lender and approved by the Bankruptcy Court (collectively, the

"Permitted DIP and Cash Uses").  No proceeds of the DIP Loan may be used to investigate,

challenge, object to or contest the validity, priority, extent or enforceability of any amount due

under, or claims granted under or in connection with the DIP Loan.  No proceeds of the DIP Loan

may be used to investigate, assert claims or causes of action against, or seek any relief against the

DIP Lender, Trevor Lee Ahlberg, Trevor Lee Ahlberg 1997 Trust, or Bomani Business Lending,

LLC.  Additional prohibitions on the usage of the DIP Loan and Cash Collateral are found herein,

including in the section entitled "Restrictions on Use of the DIP Loan and Cash Collateral."

      vi.    The DIP Facility Terms and Conditions are Fair and Reasonable. Based on

the Motion, the Nicolaou Declaration, and the record presented to the Court at the Interim Hearing,

the terms and conditions of the DIP Facility pursuant to the DIP Loan Documents (including the

payment of fees and expenses contemplated thereunder) and the use of the DIP Collateral (defined

below) and cash, pursuant to this Interim DIP Order are fair, reasonable, and the best available to

the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment

consistent with their fiduciary duties, are supported by reasonably equivalent value and

consideration, and were entered into at arm's-length, under no duress, and without undue

influence, negligence, or violation of public policy or law. Use of cash and any credit to be

extended as set forth in the DIP Loan Documents shall be deemed to have been so allowed,

advanced, made, used, or extended in good faith, and for valid business purposes and uses, within

the meaning of Bankruptcy Code section 364(e), and the DIP Lender is therefore entitled to the

protections and benefits of Bankruptcy Code section 364(e) and this Interim DIP Order.

vii.     Bankruptcy Code Sections 506(c) and Marshaling. Subject to and only upon

entry of the Final DIP Order, the DIP Lender and the Prepetition Secured Lender are entitled to a

waiver of (a) the provisions of Bankruptcy Code section 506(c), (b) the "equities of the case"

exception under 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or

any similar doctrine, except as provided herein.

viii.     Adequate Protection. The Debtors have agreed, pursuant to Bankruptcy

Code sections 361, 362, 363, and 364, to provide the Prepetition Secured Lender with adequate

protection against any Diminution in Value of their interests in the Prepetition Secured Lender

Collateral, including Cash Collateral, as set forth herein.

ix.     Good Faith Pursuant to Section 364(e). The terms and conditions of the DIP

Loan Documents, this Interim DIP Order, and the provision of the DIP Facility were negotiated in

good faith and at arm's length among the Debtors and the DIP Lender with the assistance and

counsel of their respective advisors. Credit to be extended under the DIP Facility shall be deemed

to have been allowed, made, or extended in good faith by the DIP Lender within the meaning of section 364(e) of the Bankruptcy Code.

x.      <u>Good and Sufficient Cause Shown</u>. Good and sufficient cause has been shown for entry of this Interim DIP Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' Estates and creditors. The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the business and ongoing operations, (b) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' stakeholders, and (c) maximize and stabilize the value of the Debtors' assets and avoid immediate and irreparable harm to the Debtors, their creditors, their business, their employees, and their assets. The terms of the DIP Facility are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.

xi.      <u>Final Hearing</u>. At the Final Hearing, the Debtors will seek final approval of the proposed DIP Facility and use of cash pursuant to the Final DIP Order, which shall be in form and substance acceptable to the DIP Lender and Prepetition Secured Lender. Notice of the Final Hearing and Final DIP Order will be provided in accordance with this Interim DIP Order and no further notice, except as provided by this Interim DIP Order, shall be required.

xii.      <u>Notice</u>. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated

basis); (c) the agent(s) to the Prepetition Secured Lender; (d) the United States Attorney's Office for the Northern District of Texas; (e) the Internal Revenue Service; (f) the state attorneys general for states in which the Debtors conduct business; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing is appropriate notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Complex Case Procedures, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      *Motion Approved*. The Motion is granted solely on an interim basis in accordance with the terms of this Interim DIP Order. All objections to and reservations of rights with respect to the Motion and to the entry of this Interim DIP Order to the extent not withdrawn or resolved are hereby overruled on the merits in their entirety.  All parties' rights to object to the Motion and entry of any Final DIP Order are preserved.

2.      *Interim Approval Only*.  The DIP Lender only consents to entry of this Interim DIP Order and interim adequate protection to the Prepetition Secured Lender as set forth herein, and reserves all rights with respect to entry of any further adequate protection orders or relief to the Prepetition Secured Lender, including any final cash collateral or adequate protection order.  The Prepetition Secured Lender only consents to entry of this Interim DIP Order as set forth herein and reserves all rights with respect to entry of any further DIP Orders or relief to the DIP Lender, including with respect to the entry of the Final DIP Order, if any. The Prepetition Secured Lender reserves all rights relating to the nature or extent of its collateral, including the right to assert that

all of the Debtors' cash, wherever located, comprising proceeds of or otherwise arising from or related to the Prepetition Secured Lender Collateral and the Prepetition Secured Lender Loan Documents constitutes the Cash Collateral of the Prepetition Secured Lender; the Debtors and the DIP Lender reserve the right to oppose this assertion.

      3.    *Authorization of the DIP Loans and the DIP Loan Documents*.

      a.    The DIP Facility is hereby approved solely on an interim basis. The Debtors are hereby authorized to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Loan Documents, subject to review and any objection by the Prepetition Secured Lender. Pending entry of the Final DIP Order, the Debtors are hereby authorized to borrow money pursuant to the DIP Loan Documents and request draws thereunder on an interim basis in an amount not to exceed $2.0 million (the "Interim DIP Commitment") and in accordance with the terms of this Interim DIP Order, the DIP Loan Documents, and the Approved Budget (which shall be subject to Permitted Variances). Subject to and upon entry of the Final DIP Order, the Debtors may draw such amounts as are necessary and agreed to by the DIP Lender subject to the conditions set forth in the Approved Budget and the DIP Orders; *provided however*, that the aggregate amount of all DIP Loans shall not exceed $7.0 million (the "Total DIP Commitment").[4]

      b.    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute, and deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, provided for, and automatically perfected by this Interim DIP Order and the DIP Loan Documents. The Debtors are hereby authorized to pay, in accordance with this Interim DIP Order, the principal, interest, fees,

---

[4] The DIP Lender has reserved the right to reduce the Total DIP Commitment in the event the requested lien priming pursuant to section 364(d) of the Bankruptcy Code is not authorized as part of the Final DIP Order.

4892-2687-9913.3

expenses, DIP Lender Reimbursements and other amounts described in the DIP Loan Documents and in this Interim DIP Order as such become due and without need to obtain further Court approval, as set forth herein.

c.      The DIP Loan Documents, upon execution, shall be valid and binding obligations of the Debtors, enforceable against the Debtors and their Estates in accordance with their terms, and subject to the terms of this Interim DIP Order. The DIP Loan Documents and this Interim DIP Order constitute and evidence the validity and binding effect of the DIP Obligations of the Debtors, which DIP Obligations shall be enforceable, jointly and severally, against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case"). No obligation, payment, transfer, or grant of a security or other interest to the DIP Lender under the DIP Loan Documents or this Interim DIP Order shall be stayed, restrained, avoidable, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under Bankruptcy Code section 502(d)), or subject to any defense, reduction, setoff, recoupment, or counterclaim of any kind.

d.      From and after the Petition Date, the Debtors are authorized to use extensions of credit under the DIP Facility up to the Interim DIP Commitment for the purposes specifically set forth in this Interim DIP Order and the DIP Loan Documents, and in compliance with the Approved Budget. The Debtors are authorized, subject to the satisfaction of the conditions set forth in the DIP Loan Documents, to use proceeds of the DIP Collateral and the Prepetition Secured Lender Collateral, subject to the Carve Out and Cash Collateral Diminution in Value Claims, and to draw upon the DIP Facility to (a) pay fees, costs, and expenses incurred in

17

connection with the transactions contemplated by the DIP Loan Documents; (b) pay other administrative costs incurred in connection with the Chapter 11 Cases consistent with the Approved Budget, which shall be subject to Permitted Variances; (c) pay for other working capital and general corporate purposes of the Debtors consistent with the Approved Budget, which shall be subject to Permitted Variance, and other orders entered by the Court; and (d) fund the Professional Fee Reserve. All or any portion of the DIP Obligations may be voluntarily repaid at any time without premium or penalty.  Once repaid, DIP Obligations may not be reborrowed

4.      *Non-Material and Material or Adverse DIP Amendments*. Subject to the terms and conditions of the DIP Loan Documents, the Term Sheet and this Interim DIP Order, the Debtors and the DIP Lender may supplement and otherwise make amendments or modifications to the DIP Loan Document that are non- material and non-adverse to the Debtors and the Prepetition Secured Lender. The DIP Lender may waive any provision of the DIP Loan Documents, without further approval of the Court; *provided, however,* that the Debtors shall file a notice on the Court's docket of any such amendment, modification, supplement or waiver, not more than three (3) business days after the effective date thereof. Any amendments, modifications, or supplements to any DIP Loan Documents, other than as set forth in the preceding sentence (collectively, "Material or Adverse DIP Amendments"), that are agreed to by the Debtors and the DIP Lender, as applicable, in accordance with the terms of the DIP Loan Documents, shall be filed on the Docket of these Chapter 11 Cases, with notice to (i) the Office of the United States Trustee, (ii) counsel for the Prepetition Secured Lender, and (ii) counsel for the Committee or, in the event no Committee is appointed or existing at the time, the Debtors' consolidated list of thirty (30) largest unsecured creditors. If no party in interest files an objection to the Material or Adverse DIP Amendment with the Court within five (5) business days from the date of such notice, the Debtors and the DIP

Lender are authorized and empowered to execute, deliver, and implement, in accordance with the terms of the DIP Loan Documents, such Material or Adverse DIP Amendment, without further notice, hearing, or approval of this Court. Any Material or Adverse DIP Amendment subject to a timely and unresolved objection must be approved by the Court to be effective.

5.    *Approved Budget*.

a.    <u>Compliance with Approved Budget</u>. The Debtors, the Prepetition Secured Lender, and the DIP Lender have agreed to the 30-day "<u>Approved Budget</u>" setting forth all projected cash receipts and cash disbursements on a weekly basis, a copy of which is attached hereto as **Exhibit 2**.[5]

b.    <u>New Budgets</u>. Subject to the entry of the Final DIP Order, if any, and an approved budget therewith, starting on the first Friday four weeks following the entry of this Interim DIP Order, and continuing every fourth calendar week until the DIP Termination Date (defined below), the Debtors shall deliver to counsel for the Prepetition Secured Lender and the DIP Lender an updated budget (the "<u>Proposed Budget</u>") with respect to the Debtors for the current calendar week then ended and the immediately following consecutive 3 weeks (collectively, 4 weeks), set forth on a weekly basis. Each Proposed Budget provided to the Prepetition Secured Lender and the DIP Lender shall be of no force and effect unless and until it is approved by the Prepetition Secured Lender and the DIP Lender, as described further below, and filed with the Court. Until such approval is given and filing made, the prior Approved Budget shall remain in effect. Upon written approval of the Prepetition Secured Lender and the DIP Lender, and the filing

---

[5]   For the avoidance of doubt, the Prepetition Secured Lender does not consent to any bonuses being paid during the first thirty (30) calendar days following the Petition Date; provided, however, that the Debtors may continue to make payments pursuant to their non-insider employee incentive programs, as described more fully in Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief [Docket No. 13], which recipients are not executive-level employees.

of a notice with the Court, the Proposed Budget shall become, as of the date of such approval and filing, the Approved Budget, and shall prospectively replace any prior Approved Budget.  If the Debtors, the Prepetition Secured Lender, and the DIP Lender are unable to agree on a Proposed Budget's terms, the Debtors reserve the right to seek an expedited hearing with the Court to resolve such disagreement.  In that event, the Prepetition Secured Lender and the DIP Lender shall not oppose the request for expedited consideration provided that any such hearing is held on not less than 48 hours' notice to the Prepetition Secured Lender and the DIP Lender.  In the event of any dispute regarding the terms of a Proposed Budget, the Debtors, the Prepetition Secured Lender, and the DIP Lender reserve any and all rights under the Bankruptcy Code or applicable law.

c.      Permitted Variance and Financial Reporting Requirements. As set forth further herein, the Debtors shall deliver the reports required by the DIP Loan Documents, including Variance Reports (as defined below).  All reports delivered to the DIP Lender shall also be delivered to the Prepetition Secured Lender.

6.      *Restrictions on Use of the DIP Loan and Cash Collateral.* No proceeds of the DIP Loan and no Cash Collateral may be used to (a) investigate, analyze, commence, prosecute, threaten, litigate, object to, or challenge in any manner or raise any defenses to, the validity, perfection, priority, extent or enforceability of (i) any and all amounts owed, debts, claims, obligations and indebtedness of any kind, including interest (including default interest), fees, costs, expenses, charges, and indemnities in connection with any amount due under the DIP Loan or the Prepetition Secured Lender Loan, including as outlined in the Debtors' Stipulations, or (ii) any liens, claims, security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents granted under this Interim DIP Order, the DIP Loan Documents or the Prepetition Secured Lender Loan Documents, including (but not limited

to), the Prepetition Secured Lender Liens, the Adequate Protection Liens, the DIP Liens, or any mortgage, security, interest or lien with respect thereto or any other rights or interests or replacement liens with respect thereto, including as outlined in the Debtors' Stipulations, (b) assert claims, defenses, set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (equitable, contractual or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation, including Avoidance Actions, or any other causes of action against the DIP Lender, the Prepetition Secured Lender or Trevor Lee Ahlberg, Trevor Lee Ahlberg 1997 Trust, or Bomani Business Lending, LLC or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's or the Prepetition Secured Lender's assertion, enforcement or realization of the DIP Collateral, the Prepetition Secured Lender Collateral or the Adequate Protection Collateral in accordance with this Interim DIP Order, (d) seek to subordinate or recharacterize the DIP Obligations or the Prepetition Secured Lender Obligations, or to disallow or avoid any claim, mortgage, security interest, lien or replacement lien or payment thereunder, (e) seek to modify the rights granted to the DIP Lender and the Prepetition Secured Lender herein, (f) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Bankruptcy Court, (g) file any motion seeking approval of a sale of any of the DIP Collateral or the Prepetition Secured Lender Collateral, without the approval of the DIP Lender and the Prepetition Secured Lender, or (h) pay allowed professionals fees, disbursements, costs or expenses incurred by any person, including without limitation any creditors committee, in connection with any of the foregoing; provided, however, that the official committee of unsecured creditors, if any, may use up to $20,000 prior to the expiration of the

Challenge Period for investigation of such matters, as permitted in Paragraph 32 of this Interim Order, subject to the Committee's rights to seek more funding.

7.      *Termination of Rights to Use Cash Collateral.* Unless extended further with the written consent of the Prepetition Secured Lender, the authority to use Cash Collateral under this Interim Order will automatically terminate upon the earlier of the following:

a.      Thirty (30) calendar days from the Petition Date unless a Final DIP Order is entered with a new Approved Budget;

b.      The Debtors' failure to make any payment to the Prepetition Secured Lender as and when due;

c.      The appointment of a trustee in the Chapter 11 Cases or the appointment of a responsible officer or an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate, oversee or manage the financial affairs, the business, or reorganization of the Debtors under Bankruptcy Code section 1106(b);

d.      The date that any Debtor ceases to operate its business (without the prior consent of the Prepetition Secured Lender);

e.      The granting of relief from the Automatic Stay to any party that claims an interest in the Prepetition Secured Lender Collateral or replacement collateral other than the Prepetition Secured Lender;

f.      The Court grants any party other than the Prepetition Secured Lender a lien or security interest equal to or senior to the liens and security interests held by the Prepetition Secured Lender, pursuant to the Prepetition Loan Documents or this Interim DIP Order;

g.      Any of the Debtors failing to comply with the terms of the Interim DIP Order or Final DIP Order;

h.      The dismissal of any of the Debtors' Chapter 11 Cases;

i.      The conversion of any of the Debtors' Chapter 11 Cases to chapter 7;

j.      The termination of any of the Debtors' exclusive rights to propose a chapter 11 plan or the filing of any chapter 11 plan by any party other than the Debtors;

k.      Debtors' material breach of any affirmative or negative covenants contained in the Term Sheet;

l.      Debtors' non-compliance with the Milestones (as defined below);

m.      Debtors lose or suffer a materially adverse restriction in their ability to market and service third party loans;

n.      The Bankruptcy Court enters an order modifying, reversing, revoking, staying, rescinding, or vacating this Interim DIP Order or the Final DIP Order or any portion thereof; and

o.      The DIP Lender declares an Event of Default under the Interim DIP Order, the DIP Loan Agreements or, if entered, a Final DIP Order.

Notwithstanding the foregoing, the Prepetition Secured Lender reserves all rights to seek dismissal or conversion of these chapter 11 cases, or any other actions or relief provided under the Bankruptcy Code.

8.      *Superpriority Claims of the DIP Lender.* Subject and subordinate to the Carve Out and the Cash Collateral Diminution in Value Claim only with regard to the Loan Debtors, pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall be allowed claims against the Debtors, jointly and severally, with priority over any and all administrative expenses (the "DIP Superpriority Claims") and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind

specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final DIP Order), 507(a), 507(b), 726, 1113, or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their Estates and all proceeds thereof including, subject to the entry of the Final DIP Order and the "last look" provision in paragraph 8 herein, the proceeds of actions under Chapter 5 of the Bankruptcy Code. Other than the Carve Out as to all Debtors, and the Cash Collateral Diminution in Value Claims as to the Loan Debtors, no claims (including, without limitation, any priority claims) are, or will be, senior to, prior to, or *pari passu* with the DIP Superpriority Claims or any of the DIP Obligations or with any of the other claims of the DIP Lender arising hereunder or under the DIP Loan Documents or otherwise in connection with the DIP Facility.

9.       *DIP Liens and DIP Collateral*. As security for the DIP Obligations, effective and perfected automatically upon entry of this Interim DIP Order, pursuant to Bankruptcy Code sections 364(c)(1), and 364(c)(2), and with respect to the Petition Secured Lender only, section 364(d), without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the DIP Lender of any property, the DIP Lender is hereby granted first priority security interests in and liens and mortgages upon all tangible and intangible prepetition and postpetition property in which any or each of the Debtors or their respective Estates have an interest of any kind or nature, whether existing on or as of the Petition Date or thereafter acquired or created, wherever located, including,

4892-2687-9913.3

without limitation, the proceeds, products, and offspring of any of the foregoing, including proceeds of claims and causes of action arising under Bankruptcy Code sections 502(d), 544, 547, 548, 549, 550 and 553 and any other avoidance or similar action under the Bankruptcy Code or applicable nonbankruptcy law (such claims and causes of action being "Avoidance Actions" and all tangible and intangible prepetition and postpetition property in of the Debtors or their Estates being, collectively, the "DIP Collateral"), subject and subordinate only to the Carve Out and the Cash Collateral Diminution in Value Claims as to the Loan Debtors (all such liens and security interests granted to the DIP Lender, pursuant to this Interim DIP Order and the DIP Loan Documents, the "DIP Liens"). For avoidance of doubt, pursuant to Bankruptcy Code section 364(c)(2), and with respect to the Prepetition Secured Lender only, section 364(d), the DIP Liens include a valid, binding, continuing, enforceable, fully perfected first priority lien on, and security interest in, all property of the Debtors, wherever located, whether or not subject to a valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such postpetition perfection is permitted by Bankruptcy Code section 546(b), including, but not limited to: (i) any and all cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real property, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property; and (ii) the proceeds, products and offspring of all of the foregoing. Subject to entry of the Final DIP Order and the grant of a lien on proceeds of Avoidance Actions ("Avoidance Action Proceeds"), the DIP Lender shall only avail itself of Avoidance Action Proceeds on a "last look" basis, and only if all other DIP Collateral is inadequate to indefeasibly repay the DIP Obligations in full; *provided further* that the DIP Collateral shall not include proceeds of any Avoidance Actions alleged against

4892-2687-9913.3

the DIP Lender or its affiliates or principals. The DIP Lender will seek additional priming relief under Bankruptcy Code section 364(d) as to the liens of any other potential secured creditors at the Final Hearing.  Notwithstanding the foregoing, DIP Collateral shall include (i) all of the Debtors' real property leases for which the terms of the relevant lease document do not prohibit such a lien; and (ii) only the proceeds of any of the Debtors' real property leases for which the relevant lease document prohibits such a lien on the lease itself.

10.      *Adequate Protection for Use of Cash Collateral*. The Prepetition Secured Lender's Prepetition Secured Lender Collateral, including Cash Collateral, will be authorized for use by the Debtors, and the Prepetition Secured Lender will receive as adequate protection through this Interim DIP Order (the "Adequate Protection") the following:

a.      Prepetition Secured Lender Reimbursements (as defined below);

b.      The Prepetition Secured Lender shall receive monthly adequate protection payments, payable in cash, on the 15th day of each month of $175,000 (the "Adequate Protection Payments"), with the first occurring on or before March 15, 2024. Adequate Protection Payments shall be free and clear of all liens and claims.

c.      To the extent of any of Diminution in Value of any of its Prepetition Secured Lender Collateral or Adequate Protection Collateral (defined below), the Prepetition Secured Lender is granted valid, perfected, unavoidable, replacement security interests in and liens and mortgages (together, the "Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the Prepetition Secured Lender of any property, upon all tangible and intangible prepetition and postpetition property in which any or each of the Debtors or their

4892-2687-9913.3

respective Estates have an interest of any kind or nature, including any previous unencumbered property, whether existing on or as of the Petition Date or thereafter acquired or created, wherever located, including, without limitation, the proceeds, products, and offspring of any of the foregoing, including proceeds of Avoidance Actions (all such tangible and intangible prepetition and postpetition property in of the Debtors or their Estates being, collectively, the "Adequate Protection Collateral"),[6] subject only to and subordinate to the DIP Superpriority Claim, the DIP Liens, and the Carve Out, except that the Adequate Protection Liens shall be senior to the DIP Superpriority Claim and the DIP Liens as to the assets of the Loan Debtors only in the amount of any Cash Collateral Diminution in Value Claim (as defined below). Notwithstanding the foregoing, Adequate Protection Collateral shall include (i) all of the Debtors' real property leases for which the terms of the relevant lease document do not prohibit such a lien; and (ii) only the proceeds of any of the Debtors' real property leases for which the relevant lease document prohibits such a lien on the lease itself. The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests now existing in favor of the Prepetition Secured Lender and not in substitution therefor.

Notwithstanding the foregoing, the Prepetition Secured Lender shall be entitled to seek different or additional forms of adequate protection for any reason, including due to any extension of Milestones or failure to satisfy them.

d.      *Superpriority Claim of the Prepetition Secured Lender - Cash Collateral Diminution*. The Prepetition Secured Lender is granted a final, allowed superpriority

---

[6]    The Prepetition Secured Lender's liens on proceeds of Avoidance Actions are subject to entry of a Final DIP Order. The Prepetition Secured Lender shall only avail itself of proceeds from Avoidance Actions on a "last look" basis, and only if all other Prepetition Secured Collateral and Adequate Protection Collateral is inadequate to indefeasibly repay the Prepetition Secured Loan in full; *provided further* that the Adequate Protection Liens shall not include proceeds of any Avoidance Actions alleged against the Prepetition Secured Lender.

administrative expense claim secured by the Adequate Protection Liens with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of any Final DIP Order), 507(a), 507(b), 726, 1113, or 1114 in each of the Chapter 11 Cases or in any Successor Case for any Diminution in Value of the Prepetition Secured Lender's interest in and liens on Cash Collateral from and after the Petition Date resulting from, among other things (a) subordination of the Prepetition Secured Lender's interest in such collateral, (b) the sale, lease, disposition or use of Cash Collateral, (c) the priming of prepetition liens by the DIP Liens, (d) the imposition of the Automatic Stay, and/or (e) for any other reason for which adequate protection may be granted under the Bankruptcy Code or case law ("Diminution in Value") (such claim as to Cash Collateral, the "Cash Collateral Diminution in Value Claim"). Solely for the purpose of this Interim DIP Order and the Interim DIP Commitment of $2.0 million, the Cash Collateral Diminution in Value Claim is $500,000. The Prepetition Secured Lender reserves all rights to assert and require a larger amount for the Cash Collateral Diminution in Value Claim in connection with any Final DIP Order and Total DIP Commitment. Further, the Prepetition Secured Lender shall be entitled to file and assert a Cash Collateral Diminution in Value Claim for the period covered by the Interim DIP Order in an amount greater than $500,000, and if so determined by the Court, any excess amount over $500,000 shall be treated pursuant to the provisions of the Non-Cash Collateral Diminution below. The priority of Cash Collateral Diminution in Value Claim secured by the Adequate Protection Liens shall be as follows: (a) subordinate to the Carve Out as to all Debtors; (b) subordinate to the DIP Superpriority

Claim and the DIP Liens as to Non-Loan Debtors; and (c) senior to the DIP Superpriority Claim and the DIP Liens as to the Loan Debtors. The Cash Collateral Diminution in Value Claim shall have recourse to and be payable from all Adequate Protection Collateral.

        e.      *Superpriority Claim of the Prepetition Secured Lender - Non-Cash Collateral Diminution.* The Prepetition Secured Lender is granted an allowed superpriority administrative expense claim secured by the Adequate Protection Liens with priority over any and all administrative expenses and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of any Final DIP Order), 507(a), 507(b), 726, 1113, or 1114 in each of the Chapter 11 Cases or in any Successor Case, subordinate only to payment of the DIP Superpriority Claim, the DIP Liens and the Carve Out, for any Diminution of Value of the Prepetition Secured Lender's interest in and liens on Prepetition Secured Lender Collateral that is not Cash Collateral (subject to the exception above) from and after the Petition Date (the "<u>Non-Cash Collateral Diminution in Value Claim</u>"). The Non-Cash Collateral Diminution in Value Claim shall have recourse to and be payable from all Adequate Protection Collateral.

      11.      *Carve Out.*

        a.      As used herein, the term "Carve Out" shall mean an amount equal to the sum of the following (A) : (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in clause (ii) below); (ii) to the extent allowed by the Bankruptcy Court at any time, whether by interim order, final order, or otherwise, all

accrued and unpaid fees, disbursements, costs and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and all accrued unpaid fees, disbursements, costs and expenses incurred by the Committee (if any) pursuant to sections 328 and 1103 of the Bankruptcy Code (the "Committee Professionals," together with the Debtor Professionals, the "Estate Professionals," and such Estate Professional fees in each case in accordance with the Approved Budget, the "Allowed Professional Fees") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iii) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, final order, or otherwise (the amounts set forth in this clause (iii), the "Post-Carve Out Trigger Notice Cap"); *provided, however*, nothing herein shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity.

b.      For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice (which may be delivered by e-mail (or other electronic means)) by the DIP Lender to the Debtors and their counsel, counsel to the Prepetition Secured Lender, the United States Trustee, and counsel to the Committee, and filed on the docket of the Chapter 11 Cases, which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked.[7]

---

[7]    All rights and remedies of the DIP Lender in this Carve Out section with respect to Events of Default similarly apply to the Prepetition Secured Lender with respect to termination of rights to use Cash Collateral.

c.      On a weekly basis—to the extent there is sufficient cash on hand prior to entry of the Final DIP Order, and then following entry of the Final DIP Order—the fees of the Debtors' and Committee's professionals provided for in the Approved Budget shall be funded into one of the Debtors' accounts at Bank of Texas to be used solely to satisfy Allowed Professional Fees in accordance with any applicable orders entered in the Chapter 11 Cases (the "Professional Fee Reserve"). The funds on deposit in the Professional Fee Reserve shall be available to satisfy the obligations owed to Estate Professionals, and the DIP Lender shall have a security interest on any residual amounts remaining in the Professional Fee Reserve after satisfaction in full of all Allowed Professional Fees.

d.      For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve Out shall be senior to all liens and claims securing the DIP Facility, and all other forms of adequate protection, liens, or claims securing the DIP Obligations.

e.      Notwithstanding the foregoing, the Carve Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation (A) against the DIP Lender or the Prepetition Secured Lender or (B) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset to, the obligations and the liens and security interests granted under the DIP Loan Documents or the Prepetition Secured Lender Loan Documents including, in each case, without limitation, for lender liability or pursuant to any section of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) attempts to modify any of the rights granted to the DIP Lender or the Prepetition Secured Lender; (iii) attempts to prevent, hinder, or otherwise delay any of the DIP Lender's or the Prepetition Secured Lender's, as applicable, assertion, enforcement, or realization upon any

4892-2687-9913.3

DIP Collateral in accordance with the DIP Loan Documents, this Interim DIP Order, and the Final

DIP Order or Prepetition Secured Collateral or Adequate Protection Collateral in accordance with

this Interim DIP Order and any Final DIP Order; (iv) paying any amount on account of any claims

arising before the commencement of the Chapter 11 Cases unless such payments are provided for

in the Approved Budget and approved by an order of this Court; (v) the prosecution or support any

plan of liquidation or reorganization to which the DIP Lender or the Prepetition Secured Lender

has not consented; or (vi) any direct or indirect objection or opposition to, or any other effort to

impede or compromise in any way, any credit bid made by the DIP Lender or the Prepetition

Secured Lender to the extent such bid is not consistent with this Interim DIP Order.

      12.    *Limitations on Charging Expenses Against Collateral; No Marshaling*. Subject to

and only upon entry of the Final DIP Order, (i) other than as set forth below and herein with

relation to Avoidance Action Proceeds, the DIP Lender and the Prepetition Secured Lender shall

not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the

DIP Collateral and the Prepetition Secured Collateral, as applicable, and all proceeds shall be

received and applied pursuant to the Final DIP Order and the DIP Loan Documents

notwithstanding any other agreement or provision to the contrary and (ii) the Debtors (on behalf

of themselves and their estates) shall waive, and shall not assert in the Chapter 11 Cases or any

Successor Case, any surcharge claim under sections 105(a) and/or 506(c) of the Bankruptcy Code

or otherwise for any costs and expenses incurred in connection with the preservation, protection

or enhancement of, or realization by the DIP Lender, upon the DIP Collateral or realization by the

Prepetition Secured Lender, upon the Prepetition Secured Lender Collateral or Adequate

Protection Collateral.  Notwithstanding anything to the contrary in this Interim DIP Order, the DIP

Lender shall first apply proceeds of the DIP Collateral that is not Prepetition Secured Lender

Collateral to satisfy repayment of the DIP Obligations before applying proceeds of the DIP Collateral that is Prepetition Secured Lender Collateral to satisfy repayment of the DIP Obligations; *provided however*, that in the event there is a sale of assets during the period of this Interim DIP Order which assets are Prepetition Secured Lender Collateral prior to a sale of assets which assets are not Prepetition Secured Lender Collateral, the proceeds from the sale of the assets which are Prepetition Secured Lender Collateral shall not be applied to the DIP Loan for a period of 45 calendar days following the closing of the sale.

13.     *Use of Prepetition Secured Lender Collateral and Cash*. Subject to the terms and conditions of the DIP Loan Documents and this Interim DIP Order, and solely in accordance with the 30-day Approved Budget, which shall be subject to Permitted Variances, the Debtors are hereby authorized to use the DIP Collateral and Prepetition Secured Lender Collateral, including cash, until the DIP Termination Date (as defined below) for working capital and general corporate purposes, including interest, fees, costs, and expenses related to these Chapter 11 Cases, the DIP Loan, and the DIP Loan Documents, including payment of any Adequate Protection obligations as set forth herein; *provided*, that nothing in this Interim DIP Order shall authorize, other than in the ordinary course of the Debtors' business, the sale, transfer, lease, encumbrance, or other disposition of any assets of the Debtors or their Estates without the prior written consent of the DIP Lender and the Prepetition Secured Lender (and no such consent or direction shall be implied from any other action, inaction, or acquiescence by the DIP Lender, the Prepetition Secured Lender or any order of this Court), except as permitted in the DIP Loan Documents and this Interim DIP Order and approved by the Court to the extent required under applicable bankruptcy law.

14.     *Perfection of DIP Liens and Adequate Protection Liens*. This Interim DIP Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens

granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity

of filing or recording financing statements, intellectual property filings, mortgages, notices of lien

or similar instruments in any jurisdiction, taking possession of or control over, or the taking of any

other action (including, for the avoidance of doubt, entering into any deposit account control

agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP

Liens and the Adequate Protection Liens, or to entitle the DIP Lender or the Prepetition Secured

Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender and the

Prepetition Secured Lender each are hereby authorized, but not required, to file or record financing

statements, intellectual property filings, mortgages, notices of lien or similar instruments in any

jurisdiction, taking possession of or control over, or take any other action, as they may elect, in

order to validate and perfect the liens and security interests granted to them hereunder. Whether or

not the DIP Lender or Prepetition Secured Lender chooses to file such financing statements,

intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction,

take possession of or control over, or otherwise confirm perfection of the liens and security

interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected,

allowed, enforceable, non-avoidable and not subject to challenge, dispute, or subordination

immediately upon entry of this Interim DIP Order. A certified copy of this Interim DIP Order may,

in the discretion of the DIP Lender or the Prepetition Secured Lender, as the case may be, be filed

with any filing or recording office or with any registry of deeds or similar office, and accordingly,

each officer is authorized to accept such certified copy of this Interim DIP Order for filing and

recording.

15.    *Evidence of Liens*. The Debtors shall execute and deliver promptly to the DIP

Lender and the Prepetition Secured Lender all such financing statements, mortgages, control

agreements, notices, and other documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect the DIP Liens or the Adequate Protection Liens, as applicable.

16.     *Enforceability of DIP Obligations and Prepetition Secured Lender Obligations*. Subject to entry of the Final DIP Order, if any or all of the provisions of this Interim DIP Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (a) the validity, priority, or enforceability of any DIP Liens and DIP Obligations incurred prior to the effective date of such reversal, stay, modification, or vacatur or (b) the validity, priority, or enforceability of any Adequate Protection Liens and Superpriority Claims of the Prepetition Secured Lender. Notwithstanding any such reversal, stay, modification, or vacatur, any use of Cash Collateral and any DIP Obligations incurred by the Debtors to the DIP Lender or obligations to the Prepetition Secured Lender arising herein prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender and the Prepetition Secured Lender, as applicable, shall be entitled to all of the rights, remedies, privileges, and benefits granted in Bankruptcy Code section 364(e), this Interim DIP Order, and the DIP Loan Documents.

17.     *Survival of Rights Granted Herein.* Except as expressly otherwise provided in this Interim DIP Order or in the DIP Loan Documents (i) the Carve Out, the DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Lender granted by this Interim DIP Order and the DIP Loan Documents and (ii) all rights and remedies of the Prepetition Secured Lender, including all liens and claims granted by this Interim DIP Order, shall survive, and shall not be modified, impaired, or discharged by (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, or (b) the entry of a confirmation order and, pursuant to Bankruptcy Code section

4892-2687-9913.3

1141(d)(4), the Debtors' waiver of discharge as to any remaining DIP Obligations. The terms and provisions of this Interim DIP Order and the DIP Loan Documents shall continue in these Chapter 11 Cases and in any Successor Case, and the DIP Liens, the DIP Obligations, the Carve Out, the DIP Superpriority Claims and the other administrative claims granted pursuant to this Interim DIP Order, and all other rights and remedies of the DIP Lender granted by this Interim DIP Order and the DIP Loan Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash or receive other treatment as agreed to by the DIP Lender in its sole discretion.

18.     *After-Acquired Property*. The Prepetition Secured Lender is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Subject to entry of any Final DIP Order the "equities of the case" exception shall not apply to the Prepetition Secured Lender with respect to the proceeds, products, rents, offspring, issues or profits of any of the Prepetition Secured Lender Collateral or the Adequate Protection Collateral, and no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, products, rents, offspring, issues or profits from any of the Prepetition Secured Lender Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code. Upon entry of any Final DIP Order, the Debtors and their estates shall be deemed to have irrevocably waived, and to have agreed not to assert, any claim or right under section 552 of the Bankruptcy Code seeking to avoid the imposition of the Prepetition Secured Creditor Liens or the Adequate Protection Liens on any property acquired by any of the Debtors or any of their estates or seeking to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the Prepetition Secured Lender

upon the Prepetition Secured Creditor Collateral or the Adequate Protection Collateral, as applicable.

19.     *Protection of the Rights of the DIP Lender*. Unless the DIP Lender has provided its prior written consent, or all DIP Obligations have been indefeasibly paid in full in cash, there shall not be entered in any of these Chapter 11 Cases or any Successor Case any order (including any confirmation order) that authorizes any of the following: (a) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Obligations, and the DIP Superpriority Claims, except as expressly set forth in this Interim DIP Order; (b) the use of cash for any purpose other than as permitted in the Approved Budget, DIP Loan Documents, and this Interim DIP Order; (c) the return of goods pursuant to Bankruptcy Code section 546(h) (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to Bankruptcy Code section 553 or otherwise; or (d) any modification of any of the DIP Lender's rights under this Interim DIP Order, the DIP Loan Documents with respect to any DIP Obligations.

20.     *Proceeds of Subsequent Financing*. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in the Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt other than the credit or debt provided pursuant to the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations, including subsequent to the entry of a confirmation order with respect to the Debtors and the Debtors' Estates, then all cash proceeds derived from such credit or debt

shall immediately be turned over to the DIP Lender until indefeasible payment in full of the DIP

Obligations in existence at such time in accordance with the DIP Loan Documents.

21.    *Maturity Date.* All DIP Obligations under this Interim DIP Order will be due and

payable in full in cash unless otherwise agreed to by the DIP Lender in writing on the earliest of

the following (the "Maturity Date"): (i) July 31, 2024; (ii) the date of consummation of one or

more Approved Transactions (as defined below) that, in the aggregate, constitutes a sale of all or

substantially all of the DIP Collateral; (iii) if the Final DIP Order has not been entered by the

Bankruptcy Court on or before the applicable Milestone, the date of the applicable Milestone; (iv)

the date of acceleration of the DIP Obligations and the termination of the DIP Lender's

commitments under the DIP Facility pursuant to the terms of this Interim DIP Order or the DIP

Loan Documents; (v) the date the Bankruptcy Court orders the conversion of any of the Chapter

11 Cases to a chapter 7 liquidation or the dismissal of any of the Chapter 11 Cases; (vi) the date

the Bankruptcy Court orders the appointment of chapter 11 trustee or examiner as to any Debtor;

(vii) the filing of a proposed chapter 11 plan not approved by the DIP Lender; (viii) the filing of a

proposed sale, bidding or marketing process or procedures for any of the Debtors' assets other than

the Acceptable Sale Process (as defined below); and (ix) the effective date of a chapter 11 plan of

the Debtors (any such date, the "DIP Termination Date"). Principal of, and accrued interest on, the

DIP Loan and all other amounts owing to the DIP Lender under the DIP Facility shall be payable

on the DIP Termination Date.

22.    *Case Milestones*. The Debtors, the DIP Lender, and the Prepetition Secured Lender

have agreed on the following milestones for these Chapter 11 Cases (the "Milestones" and each, a

"Milestone"):

    a.   Twenty five (25) calendar days after the Petition Date:

        i.       entry of the Final DIP Order;

4892-2687-9913.3

ii.        entry of an order approving the Debtors' rejection and surrender of certain leased premises on an interim basis;

iii.       conclusion of the surrender with respect to substantially all of the locations and assets subject to such rejections;

iv.       entry of an order approving the assumption of the Debtors' principal agreements with TreeMac Funding Group LLC ("TreeMac"); and

v.        entry of an order approving a sale and marketing process ("Acceptable Sale Process") that allows the Debtors to determine and seek Bankruptcy Court approval of a transaction (an "Approved Transaction") to sell all or substantially all of the Debtors' assets for consideration that provides for (i) the DIP Lender's full rights to credit bid the DIP Obligations (including as a stalking horse bidder); (ii) the repayment in full in cash of the DIP Obligations and all senior secured loans at the closing of any sale; and (iii) is otherwise accept able to the DIP Lender and Prepetition Secured Lender in their sole discretion.

b.        Seventy five (75) calendar days following the Petition Date: entry of an order approving the sale(s) of substantially all of the Debtors' assets pursuant to the Acceptable Sale Process, which order is must be acceptable to the DIP Lender and the Prepetition Lender in their sole discretion.

23.    *Events of Default*. Subject to any applicable cure or any notice period set forth below, if any, the Debtors' right to use proceeds of the DIP Facility shall terminate without prior order of this Court or any further action by the DIP Lender, unless waived by the DIP Lender in writing and in accordance with the terms of the DIP Loan Documents, on the earliest to occur of (each, an "Event of Default"):

39

Case 24-80035-swe11   Doc 77   Filed 02/29/24   Entered 02/29/24 20:13:23   Desc Main
Document     Page 40 of 73

a.      the Debtors' failure to make any payment to the DIP Lender as and when due;

b.      if the Debtors request authority to obtain any financing not consented to by the DIP Lender and the proceeds of which are not used to immediately pay all DIP Obligations in full;

c.      the filing by the Debtors (or with the Debtors' consent) of any chapter 11 plan or related disclosure statement that does not provide for payment in full of the DIP Obligations, unless agreed to by DIP Lender;

d.      the appointment of a trustee in the Chapter 11 Cases or the appointment of a responsible officer or an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate, oversee or manage the financial affairs, the business, or reorganization of the Borrower under Bankruptcy Code Section 1106(b);

e.      the dismissal of any of the Debtors' Chapter 11 Cases;

f.      the conversion of any of the Debtors' Chapter 11 Cases to chapter 7;

g.      the termination of any of the Debtors' exclusive rights to propose a chapter 11 plan or the filing of any chapter 11 plan by any party other than the Debtors;

h.      Debtors' material breach of any affirmative or negative covenants contained in the Term Sheet or any other DIP Loan Documents;

i.      Debtors' non-compliance with the Milestones;

j.      any material breach by Debtors of any of the terms of the Interim DIP Order or the Final DIP Order, as applicable;

k.      the Debtors lose or suffer a materially adverse restriction in their ability to market and service third party loans;

40

l.    the Bankruptcy Court enters an order modifying, reversing, revoking, staying, rescinding, or vacating the Interim DIP Order, the Final DIP Order, the DIP Loan Documents or any portion thereof;

m.    any of the Debtors' authority to use cash collateral is terminated or halted; or

n.    granting of relief from any stay of proceeding (including the Automatic Stay) so as to allow a third party to proceed against any asset of the Debtors in an amount in excess of $50,000 in the aggregate.

24.    *Rights and Remedies Upon Event of Default.* Upon (i) the occurrence and during the continuation of an Event of Default, and (ii) the expiration of a five (5) calendar day cure period (unless such Event of Default is not curable, in which case no cure period shall apply) from the date of written notice of the Event of Default by the DIP Lender to the Debtors, the Committee, the Prepetition Secured Lender, and the United States Trustee (with notice by email to counsel being sufficient) (the "Remedies Notice Parties")  without such Event of Default having been cured, the DIP Lender may (without further notice or grace period, unless required by applicable law), in its sole discretion, take any or all of the following actions: (a) declare all obligations under the DIP Loan to be immediately due and payable; (b) terminate the DIP Loan as to any future liability or obligations, including any obligation to make additional advances, but without affecting any of the obligations of the Debtors under the DIP Loan, or the DIP Superpriority Claim. Prior to exercising any rights or remedies under the Interim DIP Order or Final DIP Order or the DIP Loan Documents, the DIP Lender shall be required to file a motion with the Court using a CM/ECF emergency code seeking emergency relief from the Automatic Stay (the "Stay Relief Motion") on at least three (3) business days' written notice to the Remedies Notice Parties of the DIP Lender's

41

intent to exercise its rights and remedies (the "DIP Remedies Notice Period"). In the event the Bankruptcy Court determines during a hearing on the Stay Relief Motion that an Event of Default has occurred, the Bankruptcy Court may fashion an appropriate remedy, which may include the exercise of any and all rights available to the DIP Lender under the DIP Loan Documents, the Interim DIP Order, or the Final DIP Order, as applicable.

25.    *Financial Reporting.*

a.    Permitted Variance. The term "Permitted Variances" will mean (1) a permitted positive variance that would not cause the total cumulative operating disbursements of the Debtors for the then-current Approved Budget, including Allowed Professional Fees, to be greater than one-hundred ten percent (110%) of the then-current Approved Budget over the corresponding time period, unless the amount of such variance above one-hundred ten percent (110%) is less than or equal to the positive variance with respect to aggregate revenues and collections of the Debtors for the same period; and (2) a permitted negative variance that would not cause the total cumulative operating receipts of the Debtors for the then-current Approved Budget to be an amount less than seventy (70%) of the then-current Approved Budget over the corresponding time period.

b.    Reporting. On or before each Friday following the entry of this Interim DIP Order, the Debtors shall deliver to counsel for the DIP Lender, the Prepetition Secured Lender and any statutory committee a report showing actual results, including ending cash balances, (a) for the prior week compared to the same week in the then-current Approved Budget, and (b) for the cumulative weeks' totals compared to the same cumulative weeks' totals in the then-current Approved Budget, with reasonably detailed explanations for any variance on a line-by-line basis

42

("Financial Reporting Requirements").[8] On or before each Friday following the entry of this Interim DIP Order, the Debtors shall deliver to counsel to the DIP Lender and the Prepetition Secured Lender an updated schedule with the identities of, and the aggregate amounts of cash to be paid to any and all of the Debtors' critical vendors, including an aggregate of all past, current and future payments above $10,000 in any single month or $25,000 in the aggregate for any such vendor and its affiliates and its variance, if any, from the Approved Budget (the "Weekly Critical Vendor Schedule"). Together, the Financial Reporting Requirements and the Weekly Critical Vendor Schedule are a "Variance Report." The Prepetition Secured Lender and its professional advisors and the DIP Lender and its professional advisors will have the right, at any time, to inspect, audit, examine, check, make copies of, or extract from the books, accounts, checks orders, invoices, bills of lading, correspondence, and other records of the Debtors, and the Debtors will make all of the same available to the DIP Lender and Prepetition Secured Lender and its representatives, for such purposes. The Debtors will provide the Prepetition Secured Lender and the DIP Lender with weekly portfolio loan listings as provided to TreeMac. The Debtors will provide the Prepetition Secured Lender all financial reporting and other reports and notices owed to the DIP Lender under the DIP Facility.

c.    Meetings with DIP Lender. At the election of the DIP Lender, on each Monday (or, in the event that such day is not a business day then on the business day immediately following or on a day mutually agreed upon by the DIP Lender and the Borrower's senior management and professionals) during the Chapter 11 Cases, the Debtors' senior management and professionals shall host a telephonic meeting for the DIP Lender and its professionals at which the

---

[8]    Such reports shall include and reflect (a) all revenues collected in the prior week, (b) all disbursements made in the prior week, (c) balance in any Cash Collateral accounts, (d) accounts receivable aging and (e) comparison of amounts collected and paid in the prior week with budgeted collections and expenses.

4892-2687-9913.3

Debtors' senior management and professionals shall provide an update to the DIP Lender (and make themselves available for questions) with respect to the financial and operating performance of the Debtors and their Estates, including, but not limited to, the Variance Report.  The Prepetition Secured Lender and its professionals shall be invited and entitled to participate in such meetings.

26.     *Interim DIP Order Controls*. This Interim DIP Order shall constitute this Court's findings of fact and conclusions of law based upon the record of these Chapter 11 Cases at the Interim Hearing and shall, upon its entry by this Court, take effect and be fully enforceable as of the Petition Date. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Interim DIP Order, the provisions of this Interim DIP Order shall govern and control.

27.     *Binding Effect of Interim DIP Order*. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim DIP Order, including the liens granted herein shall, effective as of the Petition Date, become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, the Committee, the U.S. Trustee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases, any Successor Case, or upon dismissal of the Chapter 11 Cases or any Successor Case.

28.     *Costs, Fees, and Expenses of the DIP Lender and the Prepetition Secured Lender*.

a.      <u>DIP Lender Reimbursements</u>. Subject to the provisions set forth herein, the Debtors are authorized to and shall pay, when due and payable, the DIP Lender Reimbursements, including, without limitation, (i) all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the DIP Lender (including, but limited in the case of counsel, to all reasonable and documented (in summary form) out-of-pocket fees, costs,

disbursements and expenses of the DIP Lender's counsel, and any successor counsel to each), in each case in connection with the negotiations, preparation, execution and delivery of the DIP Loan Documents and the funding of all DIP Loan under the DIP Facility, including, without limitation, all due diligence, transportation, computer, duplication, messenger, audit, insurance, appraisal, valuation and consultant costs and expenses, and all search, filing and recording fees, incurred or sustained by the DIP Lender and its counsel and professional advisors in connection with the DIP Facility, the DIP Loan Documents or the transactions contemplated thereby, the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Loan Documents, and (ii) without duplication, all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the DIP Lender (including, but limited in the case of counsels, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of outside counsels to the DIP Lender (and any successor counsel), and, to the extent necessary, one firm of local counsel engaged by the DIP Lender in each relevant jurisdiction, and any successor counsel to such primary counsel and local counsel, in each case in connection with (A) the enforcement of any rights and remedies under the DIP Loan Documents, (B) the Chapter 11 Cases, including attendance at all hearings in respect of the Chapter 11 Cases; and (C) defending and prosecuting any actions or proceedings arising out of or relating to the DIP Obligations, the Liens securing the DIP Obligations, or any transaction related to or arising in connection with the DIP Loan Documents or the other DIP Loan Documents.

b. <u>Prepetition Secured Lender Reimbursements</u>. Subject to the provisions set forth herein, the Debtors are authorized and shall pay, when due and payable, all reasonable and documented out-of-pocket accrued and unpaid fees, costs, disbursements and expenses of the Prepetition Secured Lender (the "<u>Prepetition Secured Lender Reimbursements</u>"), including,

without limitation, all reasonable and documented (in summary form) fees, costs, disbursements and expenses of Jackson Walker LLP, the legal counsel (and any successor counsel) for the Prepetition Secured Lender, and any other financial advisors and consultants retained by the Prepetition Secured Lender.

    c. <u>Process and Procedure</u>. Payment of the DIP Lender Reimbursements and the Prepetition Secured Lender Reimbursements shall not be subject to allowance by the Court but shall be subject to the following process. At the same time such remittance advices are delivered to the Debtors, the professionals for the DIP Lender and the Prepetition Secured Lender, as applicable, shall deliver a copy of their respective remittance advices to counsel for DIP Lender and the Prepetition Secured Lender, as applicable, the Committee and the U.S. Trustee on a monthly basis following entry of the Final DIP Order. The remittance advices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the DIP Lender and the Prepetition Secured Lender, as applicable, the Office of the U.S. Trustee or the Committee with respect to such remittance advices within five (5) calendar days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such remittance advices shall be promptly paid by the Debtors. Except as otherwise ordered by the Court in the event an objection is timely filed, such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

    29. *Right to Credit Bid*. Subject to Bankruptcy Code section 363(k) and the terms of the DIP Loan Documents and the Carve Out, the DIP Lender shall have the right to credit bid all

or any portion of the DIP Obligations as part of any asset sale process, whether conducted pursuant to Bankruptcy Code sections 363 or 1129, or otherwise.

30. *Right to Assign*. The DIP Lender shall be permitted to assign DIP Obligations with the consent of the Debtors (such consent not to be unreasonably withheld, delayed or conditioned); provided that such consent of the Debtors shall not be required if such assignment is made to (i) an affiliate of the DIP Lender or (ii) during the continuation of an Event of Default.

31. *Indemnification and Release.*

a. The DIP Lender and Prepetition Secured Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtors, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors. The Debtors shall indemnify and hold harmless the DIP Lender, and Prepetition Secured Lender, and their respective affiliates and officers, directors, employees, agents, and advisors to the extent set forth in the Term Sheet; *provided that* any claim for indemnity under this paragraph must be brought before this Court for approval. For the avoidance of doubt, the DIP Lender and Prepetition Secured Lender shall not be indemnified for willful misconduct, gross negligence, or criminal acts. No indemnification shall be granted that violates applicable law in the Fifth Circuit.

b. The release, discharge, waivers, settlements, compromises, and agreements set forth in this subparagraph are subject and shall be deemed effective only upon entry of a Final DIP Order and subject to a Challenge Period (defined below in paragraph 32 below). Subject to entry of a Final DIP Order and the Challenge Period, the Debtors forever and irrevocably (a) release, discharge, and acquit the DIP Lender, Trevor Lee Ahlberg, Trevor Lee Ahlberg 1997 Trust, and Bomani Business Lending, LLC (together, the "Released Parties"), and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members,

partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type arising prior to the Petition Date, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Released Parties and the Debtors and their affiliates including any equitable subordination claims or defenses, with respect to or relating to the DIP Obligations, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the DIP Lender; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the DIP Obligations and the Prepetition Secured Lender Obligation.

32.     *Effect of Debtors' Stipulations and Other Admissions, Agreements and Releases*. Subject to the entry of a Final DIP Order, each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Interim DIP Order shall be deemed to be binding upon each of the Debtors, the Debtors' estates and their respective representatives, successors and assigns under all circumstances and for all purposes. Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Interim DIP Order shall be binding upon all other parties in interest, including, without limitation, any Committees appointed or formed in these Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' Estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless such Committee or any other party in interest has filed a motion or other pleading

requesting, standing as to one or any of the Debtors, to file a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code), (A) contesting, objecting or otherwise challenging the admissions, Debtors' Stipulations, findings or releases included in this Interim DIP Order, (B) contesting, objecting or otherwise challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Senior Secured Loan, or (C) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) or any other claims arising from this Interim DIP Order ("Challenge Proceeding").   Subject to entry of a Final DIP Order the period within which a Challenge Proceeding must be filed shall be no later than a date that is the later of (i) in the case of a party in interest other than any Committee or the Prepetition Secured Lender, forty five (45) calendar days after entry of this Interim DIP Order; (ii) in the case of a Committee or an appointed trustee or examiner, the earlier of forty five (45) calendar days after the filing of notice of appointment of the Committee, the trustee or the examiner or the hearing to consider confirmation of a plan; (iii) in the case of the Prepetition Secured Lender, forty five (45) calendar days after entry of any Final DIP Order; or (iv) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, provided that such order is sought before the expiration of any applicable period as set forth in clauses (i) through (iv) of this sentence (the "Challenge Period").

33.     *Good Faith Under Section 364(e).* The DIP Lender has acted in good faith in connection with the DIP Loan Documents, including this Interim DIP Order, and is entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.

34.     *Interim Compensation Procedures*. The DIP Lender hereby consents to entry of an order, to be entered contemporaneously with, or after the entry of, this Interim DIP Order, in a form reasonably acceptable to the DIP Lender.

35.     *Rights Preserved*. Other than as expressly set forth in this Interim DIP Order, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender and the Prepetition Secured Lender are preserved.

36.     *No Waiver by Failure to Seek Relief*. The failure or delay of the DIP Lender or the Prepetition Secured Lender to seek relief or otherwise exercise its respective rights and remedies under this Interim DIP Order, the DIP Loan Documents, the Prepetition Senior Secured Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lender or the Prepetition Secured Lender.

37.     *No Third Party Rights*. Except as explicitly provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

38.     *Immediate Enforceability*. This Interim DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable as of the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim DIP Order. Good cause has been shown for immediate entry of this Interim DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).

4892-2687-9913.3

39.    *Notices*.  All notices required or permitted under this Interim DIP Order shall be
sent to the respective party and attorney at the address listed below, which notice shall be in writing
and sent by certified mail, return receipt requested, hand delivery, email or by facsimile.

If notice is given to the Debtors, it shall be sent to:

Cottonwood Financial Ltd., *et al.*
c/o Gray Reed
1601 Elm Street, Suite 4600
Dallas, TX 75201
T: (214) 954-4135
F: (214) 953-1332
Attn:    Jason S. Brookner
         Aaron M. Kaufman
         Lydia R. Webb
Email: jbrookner@grayreed.com
       akaufman@grayreed.com
       lwebb@grayreed.com

If notice is given to the Prepetition Secured Lender, it shall be sent to:

Third Coast Bank SSB
5000 Legacy Drive, Suite 120
Plano, TX 75024
Attn:    JK Walker
Email: jkwalker@tcbssb.com

With a copy to:

Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
T: (214) 953-6000
F: (214) 953-5822
Attn:    Bruce Ruzinsky
         Kenneth Stohner, Jr.
         Machir Stull
Email: bruzinsky@jw.com
       kstohner@jw.com
       mstull@jw.com

If notice is given to the DIP Lender, it shall be sent to:

Nehimba Holdings, LLC
c/o Wick Phillips Gould & Martin, LLP

51

3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
T: (214) 692-6200
F: (214) 692-6255
Attn:  Jason M. Rudd
  Catherine A. Curtis,
Email: jason.rudd@wickphillips.com
  catherine.curtis@wickphillips.com

40.  *Tax Liens*. Notwithstanding any other provisions of this Order, or any agreements approved hereby, any statutory ad valorem tax liens (collectively, the "Tax Liens") held by any taxing authority in the State of Texas (the "Taxing Authorities") for prepetition and postpetition ad valorem taxes shall not be primed nor made subordinate to any liens or superpriority administrative expense claims granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Taxing Authorities are fully preserved.

41.  *Retention of Jurisdiction*. The Court retains jurisdiction to enforce this Interim DIP Order according to its terms to the fullest extent permitted by applicable law.

42.  *Final Hearing*. The Final Hearing to consider entry of the Final DIP Order is scheduled for **March 19, 2024 at 3:30 p.m. (CT)** before the Honorable Scott W. Everett, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Earle Cabell Federal Building, 1100 Commerce St., Courtroom 3, Dallas, TX 75242-1496.  The hearing will be conducted via hybrid format. Parties who will be offering evidence or participating in examination must make in-person appearances in Judge Everett's courtroom; other interested parties may appear via Webex.  Parties may review the Webex instructions for Judge Everett at: Judge Everett's Hearing dates | Northern District of Texas | United States Bankruptcy Court (uscourts.gov).

43.     *Notice of Final Hearing*. Within three (3) business days of the date of the entry of this Interim DIP Order, the Debtors shall serve a copy of the Motion and this Interim DIP Order upon: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (d) counsel to the DIP Lender; (e) counsel to the Prepetition Secured Lender; (f) financial institutions where the Debtors hold bank accounts; and (g) any party that has filed prior to such date a request for notices under Bankruptcy Rule 2002 with the Court.

44.     *Objection Deadline*. Objections, if any, to the relief sought in the Motion and entry of the Final DIP Order shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the Clerk of the Court, and personally served upon: (a) proposed counsel to the Debtors; (b) the U.S. Trustee; (c) proposed counsel to any Committee; and (d) counsel to the DIP Lender so that such objections are filed with the Court and received by said parties **on or before 4:00 p.m. (CT) on March 15, 2024**.

# # # END OF ORDER # # #

Submitted by:

Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:        (214) 954-4135
Facsimile:        (214) 953-1332
Email:        lwebb@grayreed.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

## **Exhibit 1**

### **Term Sheet**

**COTTONWOOD FINANCIAL LTD.
SECURED DEBTOR-IN-POSSESSION CREDIT
FACILITY AND USE OF CASH
COLLATERAL**

**Summary of Proposed Material Terms and Conditions**

This Summary of Proposed Material Terms and Conditions (the "Term Sheet"), dated as of February 26, 2024 sets forth (a) certain terms of the DIP Facility (as defined below), subject to the conditions set forth below, by the DIP Lender (as defined below) and (b) certain terms for the limited use of Cash Collateral (as defined section 363(a)). This Term Sheet does not attempt to describe all of the terms, conditions, and requirements that would pertain to the financing and use of Cash Collateral described herein, but rather is intended to be a summary outline of certain basic items, which shall be set forth in final documentation, which documentation shall be acceptable in all respects to the DIP Lender and the Prepetition Secured Lender in their sole discretion. This Term Sheet is qualified in all respects by the DIP Credit Agreement and the DIP Orders; and therefore, to the extent that any provision hereof conflicts with the terms of the DIP Credit Agreement and the DIP Orders, the DIP Credit Agreement and the DIP Orders shall control.

| | |
|---|---|
| **Borrowers:** | Cottonwood Financial Ltd., Cottonwood Financial Administrative Services, LLC, Cottonwood Financial Texas, LLC, Cottonwood Financial Idaho, LLC, and Cottonwood Financial Wisconsin, LLC (the "Borrowers" or the "Debtors") in the jointly administered cases under chapter 11 (the "Chapter 11 Cases") of the United States Bankruptcy Code (the "Bankruptcy Code") to be filed on or before February 25, 2024 (the "Petition Date"). |
| **DIP Lender:** | Nehimba Holdings, LLC (the "DIP Lender"). |
| **Prepetition Secured Lender:** | Third Coast Bank, SSB ("Bank"), in its capacity as Lender (the "Prepetition Secured Lender") and Debtor Cottonwood Financial Ltd., as borrower, are parties to that certain Loan Agreement, dated as of December 9, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified, the "Prepetition Senior Secured Loan Agreement"), providing for a loan in the aggregate principal amount of $25,000,000.00 (the "Prepetition Senior Secured Debt"), and related prepetition collateral and loan documents related thereto (collectively, the "Prepetition Senior Secured Loan Documents" and all Obligations (as defined in the Prepetition Credit Agreement) thereunder, the "Prepetition Senior Secured Loan"). Payment of the Prepetition Senior Secured Loan is guaranteed by Cottonwood Financial Texas, LLC and Cottonwood Financial Administrative Services, LLC. |
| **Prepetition Secured Lender Collateral:** | The Prepetition Secured Lender has first-priority, fully-perfected liens on and security interest in and to all assets and property (real and personal, tangible and intangible), whether now owned by or owing to, or hereafter acquired by, or arising in favor Cottonwood Financial Ltd. Cottonwood Financial Texas, LLC and Cottonwood Financial Administrative Services, LLC, as further described and defined in the Prepetition Senior Loan Documents, which includes all (a) Accounts, (b) Accessions, (c) Assigned Contracts, (d) Chattel Paper, (e) Collateral Records, (f) Commercial Tort Claims, (g) Commodity Accounts, (h) Commodity |

| | |
|---|---|
| | Contracts, (i) Deposit Accounts, (j) Documents, (k) Equipment, (l) Financial Assets, (m) Fixtures, (n) General Intangibles, (o) Goods (including furniture), (p) Insurance, (q) Intellectual Property, (r) Instruments, (s) Inventory, (t) Investment Property, (u) Letters of Credit, (v) Letter-of-Credit Rights, (w) Licenses, (x) Money, (y) Payment Intangibles, (z) Permits, (aa) Pledged Equity Interests, (ab) Securities, (ac) Securities Accounts, (ad) Security Entitlements, (ae) Software, (af) Supporting Obligations, (ag) Pledged Debt and (ah) Proceeds (collectively, the "Prepetition Secured Collateral"). |
| **Type and Amount of the DIP Facility:** | A superpriority, multiple draw term loan facility (the "DIP Facility") in an aggregate principal amount up to $7 million (net of the original issue discount) (the "Term Loan Commitments"), of which (i) $2 million (the "Interim Funding") will be available upon entry of an interim order by the Bankruptcy Court, in a form acceptable to the DIP Lender and Prepetition Secured Lender in all respects, approving the terms and conditions of the DIP Facility and authorizing the use of Cash Collateral (the "Interim DIP Order") and (ii) the remaining $5 million will be available upon entry of a final order by the Bankruptcy Court, in a form acceptable to the DIP Lender and Prepetition Secured Lender in all respects, approving the DIP Facility on a final basis and authorizing the use of Cash Collateral (the "Final DIP Order" and together with the Interim DIP Order, the "DIP Orders"). All amounts at any time outstanding under the DIP Facility are referred to as the "DIP Loans."<br><br>The Prepetition Secured Lender only consents to entry of the Interim DIP Order as set forth herein, and reserves all rights with respect to entry of any further DIP Orders, including the Final DIP Order, or relief to the DIP Lender.<br><br>The DIP Loans shall, subject to the borrowing conditions set forth herein, in the loan agreement evidencing the DIP Facility (the "DIP Credit Agreement") and in the applicable DIP Order, be made in draws following entry of the applicable DIP Order on the dates and not to exceed the amounts as set forth in the Initial Budget (as defined below) as approved by the DIP Lender and Prepetition Secured Lender (each net of the original issue discount) (each a "DIP Draw" and collectively, the "DIP Draws"), in an aggregate amount not to exceed the remaining principal balance of the DIP Loans. |
| **Interest Rate; Default Rate:** | At all times prior to the occurrence of an Event of Default (as defined below), interest on the DIP Loans shall accrue at a rate per annum equal to eleven percent (11%) per annum (the "Interest Rate"). All interest shall be payable in cash upon the Maturity Date (as defined below), except in the Event of Default.<br><br>Upon the occurrence and during the continuation of an Event of Default, interest on the DIP Loans shall accrue at fourteen percent (14%) per annum (the "Default Interest"), which shall be payable in cash on demand.<br><br>All interest shall be computed on the basis of a 360-day year for the |

| | actual number of days occurring in the period for which such interest is payable. |
|---|---|
| **Original Issue Discount** | The DIP Loans shall be made with an original issue discount of three percent (3%) to (a) the Interim Funding upon entry of the Interim DIP Order; and (b) the remaining $5,000,000 upon entry of the Final DIP Order. |

| | |
|---|---|
| **Priority and Security under DIP Facility:** | Subject only to the Carve Out and the Cash Collateral Diminution in Value Claim (as defined below), the DIP Loans shall be secured by, and the Interim DIP Order and the Final DIP Order and will provide the DIP Lender automatically perfected first priority liens on and security interests in (the "DIP Liens") all assets and property (real and personal), whether now owned by or owing to, or hereafter acquired by, or arising in favor of the Borrowers (together, the "DIP Collateral"). The Final DIP Order will expand the DIP Collateral to include all proceeds of claims and causes of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"); *provided however*, the DIP Lender shall only avail itself of proceeds from Avoidance Actions on a "last look" basis, and only if all other DIP Collateral is inadequate to indefeasibly repay the DIP Loans in full; *provided further* that the DIP Collateral shall not include proceeds of any Avoidance Actions alleged against the DIP Lender or its affiliates or principals. |
| **Superpriority DIP Claims:** | All of the claims of the DIP Lender on account of the DIP Loans (the "DIP Claims") shall be entitled to the benefits of section 364(c)(1) of the Bankruptcy Code, having a superpriority over any and all administrative expenses of the kind that are specified in, or contemplated by, sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503, 506, 507(a), 507(b), 546, 552, 726, 1113, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve Out and the Cash Collateral Diminution in Value Claim (as defined below). |
| | The DIP Claims will, at all times during the period that the DIP Loans remain outstanding, remain, in right of payment, senior in priority to all other claims or administrative expenses, subject only to the Carve Out and the Cash Collateral Diminution in Value Claim. |
| **Carve Out:** | "Carve Out" means an amount equal to the sum of the following (A) : (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in clause (ii) below); (ii) to the extent allowed by the Bankruptcy Court at any time, whether by interim order, final order, or otherwise, all accrued and unpaid fees, disbursements, costs and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "Debtor Professionals") and all accrued unpaid fees, disbursements, costs and expenses incurred by the Committee (if any) pursuant to sections 328 and 1103 of the Bankruptcy Code (the "Committee Professionals," together with the Debtor Professionals, the "Estate Professionals," and such Estate Professional |

|  | fees in each case in accordance with the Budget, the "Allowed Professional Fees") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iii) Allowed Professional Fees of Estate Professionals in an aggregate amount not to exceed $50,000 incurred after the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, final order, or otherwise (the amounts set forth in this clause (iii), the "Post-Carve Out Trigger Notice Cap"); *provided, however*, nothing herein shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity. For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice (which may be delivered by e-mail (or other electronic means)) by the DIP Lender to the Debtors and their counsel, counsel to the Prepetition Secured Lender, the United States Trustee, and lead counsel to any Committee appointed in the Chapter 11 Cases, and filed on the docket of the Chapter 11 Cases, which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

On a weekly basis—to the extent there is sufficient cash on hand prior to entry of the Final DIP Order, and then following entry of the Final DIP Order—the fees of the Debtors' and Committee's professionals provided for in the Budget shall be funded into one of the Debtors' existing DIP accounts, but segregated from all other funds, and used solely to satisfy Allowed Professional Fees in accordance with any applicable orders entered in the Chapter 11 Cases (the "Professional Fee Reserve"). The funds segregated for the Professional Fee Reserve shall be available to satisfy the obligations owed to Estate Professionals, and the DIP Lender shall have a security interest on any residual amounts remaining in the Professional Fee Reserve after satisfaction in full of all Allowed Professional Fees.

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve Out shall be senior to all liens and claims securing the DIP Facility, and all other forms of adequate protection, liens, or claims securing the DIP Loans. |
| **Chapter 11 Cases Milestones:** | The DIP Orders will include the following milestones (collectively, the "Milestones") related to the Debtors' Chapter 11 Cases with it being understood that, except as provided below, all orders must be reasonably acceptable to the DIP Lender and the Prepetition Secured Lender (other than the DIP Orders and the order approving an Acceptable Sale Process, which must be acceptable in their sole discretion):

1.     25 days after the Petition Date: (a) entry of the Final DIP Order; (b) entry of an order approving the Debtors' rejection and surrender of certain leased premises on an interim basis; (c) conclusion of the surrender with respect to substantially |

| | all of the locations and assets subject to such rejections; (d) entry of an order approving the assumption of the Debtors' principal agreements with TreeMac Funding Group LLC; (e) entry of an order approving an Acceptable Sale Process (as defined below). |
| | 2. 75 days after the Petition Date: entry of an order approving the sale(s) of substantially all of the Debtors' assets pursuant to the Acceptable Sale Process. |

| **Acceptable Sale and Marketing Process and Plan:** | A sales and marketing process (an "<u>Acceptable Sale Process</u>") that allows the Debtors to determine and seek Bankruptcy Court approval of a transaction (an "<u>Approved Transaction</u>") to sell all or substantially all of the Debtors' assets for consideration that provides for (i) the DIP Lender's full rights to credit bid the DIP Loans (including as a stalking horse bidder); (ii) the repayment in full in cash of the DIP Loans and all senior secured loans at the closing of any sale; and (iii) is otherwise acceptable to the DIP Lender and Prepetition Secured Lender in their sole discretion. |
| | A chapter 11 plan (an "<u>Acceptable Plan</u>") that provides for, as applicable (i) the repayment in full in cash of the DIP Loans and all senior secured loans at the closing of any sale; (ii) is otherwise acceptable to the DIP Lender and Prepetition Secured Lender in their sole discretion; and (iii) the full and complete release and exculpation as of the effective date of the plan of the DIP Lender, Trevor Lee Ahlberg, Trevor Lee Ahlberg 1997 Trust, and Bomani Business Lending, LLC to the fullest extent permitted by law. The Prepetition Secured Lender does not agree or consent to pursue a Plan process at this time.[1] |
| **Conditions Precedent to DIP Draws:** | The DIP Credit Agreement will contain usual and customary conditions precedent for transactions of this type and others that are determined to be appropriate by and which are reasonably acceptable to the DIP Lender (in its sole discretion), including, without limitation, the following, as a condition to any DIP Draw: |

---

[1] The Secured Prepetition Lender reserves all rights with respect to any releases contemplated or referenced in this Term Sheet, the Interim DIP Order and/or any Plan, which releases shall not become effective, if ever, until after entry of an order by the Bankruptcy Court. For the avoidance of doubt, no releases are granted pursuant to the Interim DIP Order and all rights are expressly reserved.

1.  entry of the Interim DIP Order or Final DIP Order, as the case may be, in form and substance consistent with the terms and conditions set forth herein and otherwise satisfactory to the DIP Lender and the Prepetition Secured Lender in their sole discretion, which Interim DIP Order or Final DIP Order, as the case may be, shall be in full force and effect, shall provide DIP Lender with lien priming all other liens, except as set forth herein with respect to the Cash Collateral Diminution in Value Claim, shall not have been reversed, vacated or stayed and shall not have been amended, modified, supplemented or otherwise modified without the prior written consent of the DIP Lender or Prepetition Secured Lender;

2.  the DIP Lender and Prepetition Secured Lender shall have received a cash flow forecast setting forth all forecasted receipts and disbursements of the Debtors on a weekly basis for the period beginning as of the week of the Petition Date through 30 days thereafter, broken down by week, including the anticipated weekly uses of the proceeds of the DIP Facility for such period, which forecast shall be reasonably acceptable to and approved by the DIP Lender and the Prepetition Secured Lender before filing (the "Initial Budget");[2]

3.  there shall be no default or Event of Default under the DIP Credit Agreement and each of the representations and warranties set forth in the DIP Credit Agreement shall be true and correct in all material respects;

4.  the aggregate amount of actual receipts of the type included in the line item "Total Receipts" received by the Debtors from the Petition Date to the date of such DIP Draw shall not be less than 70% of the amount set forth under the line item "Total Receipts" in the then Approved Budget (as defined below);

5.  the Debtors certify that, to the best of their knowledge, they are in full compliance with all applicable local, state, and federal regulations, statutes, licensing, decrees, orders, and similar requirements;

6.  the Debtors certify that, to the best of their knowledge, no regulator, governmental body, or agency has taken action or provided notice of potential or threatened action that could adversely impact the Debtors' business or business prospects;

7.  the Debtors certify that, to the best of their knowledge,

---

[2] For the avoidance of doubt, the Prepetition Secured Lender only consents to a 30-day budget at this time.

39295850v.2

|  | there has been no change of law, statute, regulation, order, decree, or guideline that could adversely impact the Debtors' business or business prospects; |
|--|--|
|  | 8.   the Debtors certify that, to the best of their knowledge, there has been no change of TreeMac Funding Group LLC's underwriting or business that could adversely impact the Debtors' business or business prospects; |
|  | 9.   receipt by the DIP Lender and Prepetition Secured Lender of a schedule setting forth the identities of, and the aggregate amounts of cash to be paid from time to time in the chapter 11 cases to, any and all of the Debtors' critical vendors above $10,000.00 in any single month or $25,000.00 in the aggregate for any such vendor and its affiliates, which schedule shall be acceptable to the DIP Lender and the Prepetition Secured Lender.[3] |
|  | 10.   It is understood and agreed that no legal opinions shall be a condition to the funding of any DIP Draw. |

| **Maturity:** | All DIP Loans will be due and payable in full in cash on the earliest of (the "Maturity Date"): (i) July 31, 2024; (ii) the date of consummation of one or more Approved Transactions that, in the aggregate, constitutes a sale of all or substantially all of the DIP Collateral; (iii) if the Final DIP Order has not been entered by the Bankruptcy Court on or before the applicable Milestone, the date of the applicable Milestone; (iv) the date of acceleration of the DIP Loans and the termination of the DIP Lender's commitments under the DIP Facility pursuant to the terms of the DIP Credit Agreement; (v) the date the Bankruptcy Court orders the conversion of the chapter 11 case of any of the Debtors to a chapter 7 liquidation or the dismissal of the chapter 11 case of any Debtor; (vi) the date the Bankruptcy Court orders the appointment of chapter 11 trustee or examiner as to any Debtor; the filing of a proposed chapter 11 plan other than the Acceptable Plan; (vii) the filing of a proposed sale, bidding or marketing process or procedures for any of the Debtors' assets other than the Acceptable Sale Process; and (viii) the effective date of a chapter 11 plan of the Debtors.

The DIP Lender shall first apply proceeds of the DIP Collateral that is not the Prepetition Secured Lender's Prepetition Secured Collateral to satisfy the repayment of the DIP Loans before applying proceeds of the DIP Collateral that is existing prepetition collateral of the Prepetition Secured Lender to satisfy the repayment of the DIP Loans; *provided however*, that in the event there is a sale of assets during the period of the Interim Order which are Prepetition Secured Collateral to a sale of assets which are not Prepetition Secured Collateral, the proceeds from the sale of the assets which are Prepetition Secured Collateral shall not be applied to the DIP Loan for a period of 45 calendar days following a |

---

[3] The Prepetition Secured Lender reserves all rights on critical vendor issues.

39295850v.2

| | |
|---|---|
| | closing of the sale. The Prepetition Secured Lender reserves all rights to assert and require additional time beyond 45 calendar days in connection with the Final DIP Order. For avoidance of doubt, the DIP Lender must consent to any material change between the Interim DIP Order and the Final DIP Order, and is under no obligation to advance funds beyond the Interim Funding. |
| **Events of Default** | The following and any other event of default included in any DIP Credit Agreement or the DIP Orders shall be events of default (collectively, "Events of Default" with each being an "Event of Default"):<br><br>1.    the Debtors' failure to make any payment to the DIP Lender as and when due;<br><br>2.    if the Debtors request authority to obtain any financing not consented to by the DIP Lender and the proceeds of which are not used to immediately pay all DIP Loans in full;<br><br>3.    the filing by the Debtors (or with the Debtors' consent) of any chapter 11 plan or related disclosure statement that does not provide for payment in full of the DIP Loans and obligations, unless agreed to by DIP Lender;<br><br>4.    the appointment of a trustee in the Chapter 11 Cases or the appointment of a responsible officer or an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate, oversee or manage the financial affairs, the business, or reorganization of the Borrower under Bankruptcy Code Section 1106(b);<br><br>5.    the dismissal of any of the Debtors' Chapter 11 Cases;<br><br>6.    the conversion of any of the Debtors' Chapter 11 Cases to chapter 7;<br><br>7.    the termination of any of the Debtors' exclusive rights to propose a chapter 11 plan or the filing of any chapter 11 plan by any party other than the Debtors;<br><br>8.    Debtors' material breach of any affirmative or negative covenants contained in this Term Sheet or any other DIP Credit Agreement;<br><br>9.    Debtors' non-compliance with the Milestones;<br><br>10.    any material breach by Debtors of any of the terms of the DIP Orders, as applicable;<br><br>11.    the Debtors lose or suffer a materially adverse restriction in their ability to market and service third party loans; |

DIP Loan Term Sheet | 8

|  | 12. the Bankruptcy Court enters an order modifying, reversing, revoking, staying, rescinding, or vacating the DIP Orders, the DIP Credit Agreement or any portion thereof; |
|  | 13. any of the Debtors' authority to use Cash Collateral is terminated or halted; or |
|  | 14. granting of relief from any stay of proceeding (including the automatic stay) so as to allow a third party to proceed against any asset of the Debtors in an amount in excess of $50,000 in the aggregate. |

| **Use of DIP Proceeds and Cash Collateral:** | Proceeds of the DIP Loans will be used only for the following purposes, in each case, in accordance with and subject to the Approved Budget (as defined below) then in effect: (i) general corporate and working capital purposes; (ii) the payment of restructuring costs; (iii) the payment of Adequate Protection Payments (as defined below) and reasonable and documented post-petition professionals' fees and expenses (as discussed below) to the Prepetition Secured Lender; and (iv) the payment of all reasonable and documented accrued and unpaid transaction costs, fees and expenses with respect to the DIP Facility, including reasonable and documented costs, fees and expenses of professional advisors to the DIP Lender. |
|  | Cash Collateral will only be used in accordance with and subject to the 30-day Initial Budget. For the avoidance of doubt, the Prepetition Secured Lender does not consent to any bonuses being paid during the 30-day Initial Budget; *provided, however*, that the Debtors may continue to make payments pursuant to their non insider employee incentive programs, as described more fully in Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief [Docket No. 13]. For the avoidance of doubt, the employee recipients are not executive-level employees. |
|  | No proceeds of the DIP Loan may be used to investigate, challenge, object to or contest the validity, priority, extent or enforceability of any amount due under, or claims granted under or in connection with the DIP Loan. No proceeds of the DIP Loan may be used to investigate, assert claims or causes of action against, or seek any relief against the DIP Lender, Trevor Lee Ahlberg, Trevor Lee Ahlberg 1997 Trust, or Bomani Business Lending, LLC; *provided, however,* that the official committee of unsecured creditors, if any, may use up to $20,000 to investigate any such claims or causes of action. |
|  | No Cash Collateral may be used to investigate, challenge, object to or contest the validity, priority, extent or enforceability of any amount due under, or claims granted under or in connection with the Prepetition Secured Loan. No Cash Collateral may be used to investigate, assert |

DIP Loan Term Sheet | 9

| | |
|---|---|
| | claims or causes of action against, or seek any relief against the Prepetition Secured Lender or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors *provided, however,* that the official committee of unsecured creditors, if any, may use up to $20,000 to investigate the validity, priority, enforceability or perfection of the Prepetition Secured Lender's liens or claims. |
| **Termination of Rights to Use Cash Collateral** | Unless extended further with the written consent of the Prepetition Secured Lender, the authority to use Cash Collateral will automatically terminate upon the earlier of the following: <br><br> • 30 days from the Petition Date. <br> • The Debtors' failure to make any payment to the Prepetition Secured Lender as and when due. <br> • The appointment of a trustee in the Chapter 11 Cases or the appointment of a responsible officer or an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate, oversee or manage the financial affairs, the business, or reorganization of the Borrower under Bankruptcy Code Section 1106(b). <br> • The date that any Debtor ceases to operate its business (without the prior consent of the Prepetition Secured Lender). <br> • The granting of relief from the automatic stay to any party that claims an interest in the Prepetition Secured Collateral or replacement collateral other than the Prepetition Secured Lender. <br> • The Court grants any party other than the Prepetition Secured Lender a lien or security interest equal to or senior to the liens and security interests held by the Prepetition Secured Lender, pursuant to the Prepetition Loan Documents or this DIP Orders. <br> • Any of the Debtors failing to comply with the terms of the DIP Orders. <br> • The dismissal of any of the Debtors' Chapter 11 Cases. <br> • The conversion of any of the Debtors' Chapter 11 Cases to chapter 7. <br> • The termination of any of the Debtors' exclusive rights to propose a chapter 11 plan or the filing of any chapter 11 plan by any party other than the Debtors. <br> • Debtors' material breach of any affirmative or negative covenants contained in this Term Sheet. <br> • Debtors' non-compliance with the Milestones. <br> • The Debtors lose or suffer a materially adverse restriction in their ability to market and service third party loans. <br> • The Bankruptcy Court enters an order modifying, reversing, revoking, staying, rescinding, or vacating the DIP Orders or any portion thereof. <br> • The DIP Lender declares an Event of Default under the DIP Orders or the DIP Credit Agreement. <br><br> Notwithstanding the foregoing, the Prepetition Secured Lender reserves |

| | all rights to seek dismissal or conversion of these chapter 11 cases, or any other actions. |
|---|---|
| **Representations and Warranties:** | Usual and customary for transactions of this type and others determined to be reasonably appropriate by the DIP Lender and Prepetition Secured Lender, in each case, that are reasonably acceptable to the DIP Lender and Prepetition Secured Lender. |
| **Affirmative and Negative Covenants:** | Usual and customary for transactions of this type and others determined to be reasonably appropriate by the DIP Lender and Prepetition Secured Lender, in each case, that are reasonably acceptable to the DIP Lender and Prepetition Secured Lender, including, without limitation:<br><br>1.    delivery of budget updates to the Initial Budget, with variance reports (together with the Initial Budget, each, an "Approved Budget") at least monthly plus as set forth in any cash collateral order to which any of the Debtors are subject;<br><br>2.    limitations on variances from the Approved Budget on disbursements and receipts, which limitations (including any permitted variances) and the line items of such Approved Budget tested in connection therewith, and the frequency and periods of such testing, shall be identical to such limitations and budget testing set forth in any cash collateral order to which any of the Debtors are subject;<br><br>3.    subject to exceptions to be agreed in the definitive documentation (which such exceptions shall be acceptable to the DIP Lender and the Senior Secured Lender) and other than the Carve Out and the Cash Collateral Diminution in Value Claim, the Debtors may not incur any indebtedness, grant any lien, dispose of any property, make any payment or distribution in respect of any prepetition claim or liability, including to any critical vendors or in respect of any critical vendor program, or permit any direct or indirect subsidiary to incur any indebtedness or grant any lien, or, in each case, enter into any agreement to do any of the foregoing, in each case without the prior written consent of the DIP Lender and the Prepetition Secured Lender; and<br><br>4.    prior to any DIP Draw or such later date as agreed to by the Debtors and the DIP Lender, the Debtors, the DIP Lender shall enter into the DIP Credit Agreement and related loan documents, in each case, in form and substance satisfactory to the DIP Lender and the Prepetition Secured Lender. |

DIP Loan Term Sheet | 11

| | |
|---|---|
| **Remedies:** | Upon (i) the occurrence and during the continuation of an Event of Default, and (ii) the expiration of a five (5) calendar day cure period (unless such Event of Default is not curable, in which case no cure period shall apply) from the date of written notice of the Event of Default by the DIP Lender to the Debtors, counsel to the Prepetition Secured Lender, any committee, and the United States Trustee (with notice by email to counsel being sufficient) (the "<u>Remedies Notice Parties</u>") and with such notice of Event of Default to be filed on the docket of the Chapter 11 Cases, without such Event of Default having been cured, the DIP Lender may (without further notice or grace period, unless required by applicable law) in its sole discretion, take any or all of the following actions: (a) declare obligations under the DIP Loan to be immediately due and payable; and (b) terminate the DIP Loan as to any future liability or obligations, including any obligation to make additional Advances, but without affecting any of the obligations of the Debtors under the DIP Loan, or the DIP Super-priority Claim. Prior to exercising any rights or remedies under the DIP Orders or the DIP Credit Agreement, the DIP Lender shall be required to file a motion with the Court using a CM/ECF emergency code seeking emergency relief from the automatic stay (the "<u>Stay Relief Motion</u>") on at least three (3) business days' written notice to the Remedies Notice Parties of the DIP Lender's intent to exercise its rights and remedies (the "<u>DIP Remedies Notice Period</u>"). In the event the Bankruptcy Court determines during a hearing on the Stay Relief Motion that an Event of Default has occurred, the Bankruptcy Court may fashion an appropriate remedy, which may include the exercise of any and all rights available to the DIP Lender under the DIP Credit Agreement and the DIP Orders, as applicable. |
| **Professional Fees:** | The Debtors shall pay all reasonable and documented out-of-pocket accrued and unpaid fees, costs, disbursements and expenses of (a) the DIP Lender (including, without limitation, the reasonable and documented fees, costs and expenses of its legal counsel (including, for the avoidance of doubt, the fees, costs and expenses of Wick Phillips Gould & Martin, LLP) and financial advisors) and (b) the Prepetition Secured Lender (including, without limitation, the reasonable and documented fees, costs and expenses of its legal counsel (including, for the avoidance of doubt, the fees, costs and expenses of Jackson Walker LLP, and financial advisors). 

Payment of the DIP Lender and Prepetition Secured Lender reimbursements shall not be subject to allowance by the Court but shall be subject to the following process. At the same time such remittance advices are delivered to the Debtors, the professionals for the DIP Lender and the Prepetition Secured Lender shall deliver a copy of their respective remittance advices to counsel to the DIP Lender and the Prepetition Secured Lender, each as applicable, counsel for any committee and the U.S. Trustee. The remittance advices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the DIP Lender, the Prepetition Secured Lender, the Office of the U.S. Trustee, or any committee with respect to such remittance advices within ten (10) calendar days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such remittance advices shall be promptly paid by the Debtors. Except as otherwise ordered by the Court in the |

| | |
|---|---|
| | event an objection is timely filed, such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever. |
| **Assignments:** | The DIP Lender shall be permitted to assign DIP Loans with the consent of the Borrowers (such consent not to be unreasonably withheld, delayed or conditioned); provided that such consent of the Borrowers shall not be required if such assignment is made to (i) an affiliate of the DIP Lender or (ii) during the continuation of an Event of Default. |
| **Adequate Protection for Use of Cash Collateral:** | The Prepetition Secured Lender will receive the following as adequate protection through the DIP Orders (the "Adequate Protection"):[4]<br><br>(i) as referenced above, cash payment of reasonable and documented post-petition professionals' fees and expenses for one law firm serving as primary counsel to the Prepetition Secured Lender, and all other reasonable and documented out-of-pocket accrued and unpaid fees, costs, disbursements, and expenses of the Prepetition Secured Lender;<br><br>(ii) cash payments on the 15th day of each month in amount equal to $175,000 (the "Adequate Protection Payments"), with the first Adequate Protection Payment occurring on or before March 15, 2024;<br><br>(iii) to the extent of any diminution of any of its Prepetition Secured Collateral or Adequate Protection Collateral (defined below), valid, perfected, unavoidable, replacement security interests in and liens ("Adequate Protection Liens") in and on all assets and property (real and personal, tangible and intangible), whether now owned by or owing to, or hereafter acquired by, or arising in favor of the Debtors and/or their bankruptcy estates, including any previous unencumbered assets (the "Adequate Protection Collateral"), subject only to and subordinate to the DIP superpriority claim, the DIP Liens, and the Carve-Out, except that the Adequate Protection Liens shall be senior to the DIP superpriority claim and the DIP Liens as to the assets of the Loan Debtors only in the amount of any Cash Collateral Diminution in Value Claim. The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests existing in favor of the Prepetition Secured Lender and not in substitution therefor.<br><br>(v) Diminution Super-Priority Claim:<br>• Cash Collateral Diminution: The Prepetition Secured Lender is granted a final, allowed superpriority administrative expense claim and lien (as provided above) under section 507(b) in each of the chapter 11 cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the chapter 11 cases, or in any |

---

[4]    Adequate Protection includes other rights and obligations herein, even if in a different section of this term sheet. For the avoidance of doubt, all Adequate Protection Liens attach to Avoidance Actions proceeds; *provided however*, the Prepetition Secured Lender shall only avail itself of proceeds from Avoidance Actions on a "last look" basis, and only if all other Prepetition Secured Collateral and Adequate Protection Collateral is inadequate to indefeasibly repay the Prepetition Secured Loan in full; *provided further* that the Adequate Protection Liens shall not include proceeds of any Avoidance Actions alleged against the Prepetition Secured Lender.

other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases") to the extent of any diminution in value of the Prepetition Secured Lender's interest in and liens on Cash Collateral from and after the Petition Date resulting from, among other things (a) subordination of the Prepetition Secured Lender's interest in the Cash Collateral to the Carve-Out, (b) the sale, lease, disposition or use of Cash Collateral, (c) the priming of prepetition liens by the DIP Liens, (d) the imposition of the automatic stay pursuant to Bankruptcy Code section 362, and/or (e) for any other reason for which adequate protection may be granted under the Bankruptcy Code or case law (the "Cash Collateral Diminution in Value Claim"). Solely for the purpose of the Interim Order and the Interim DIP Loan of $2,000,000.00 the Cash Collateral Diminution in Value Claim is determined to be $500,000.00. The Prepetition Secured Lender reserves all rights to assert and require a larger amount for the Cash Collateral Diminution in Value Claim in connection with the Final DIP Order and Final DIP Loan.[5] Further, the Prepetition Secured Lender shall be entitled to file and assert a Cash Collateral Diminution in Value Claim for the period covered by the Interim DIP Order in an amount greater than $500,000.00, and if so determined by the Court, any excess amount over $500,000.00 shall be treated pursuant to the provisions of the Non-Cash Collateral Diminution below. The priority of Cash Collateral Diminution in Value Claim shall be as follows:

a.  subordinate to the Carve Out as to all Debtors;

b.  subordinate to the DIP superpriority claim and the DIP Liens as to the Non-Loan Debtors;[6] and

c.  senior to the DIP superpriority claim and the DIP Liens as to the Loan Debtors.[7]

- Non-Cash Collateral Diminution: The Prepetition Secured Lender is granted an allowed superpriority administrative expense claim and lien (as provided above) under section 507(b) in each of the chapter 11 cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the chapter 11 cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"), subordinate to payment of the DIP superpriority claim, DIP Liens, and the Carve-Out, to the extent of any diminution in value of the Prepetition Secured Lender's interest in and liens on non-Cash Collateral from and after the Petition Date resulting from, among other things (a)

---

[5]   For avoidance of doubt, the DIP Lender must consent to any increase of the Cash Collateral Diminution in Value Claim in the Final DIP Order, and is under no obligation to advance funds beyond the Interim Funding.

[6]   The "Non-Loan Debtors" shall mean Cottonwood Financial Idaho, LLC and Cottonwood Financial Wisconsin, LLC.

[7]   The "Loan Debtors" shall mean Cottonwood Financial Ltd., Cottonwood Financial Administrative Services, LLC, and Cottonwood Financial Texas, LLC.

39295850v.2

|  | subordination of the Prepetition Secured Lender's interest in the non-cash collateral to the Carve-Out, (b) the sale, lease, disposition or use of non-Cash Collateral, (c) the priming of prepetition liens by the DIP Liens, (d) the imposition of the automatic stay pursuant to Bankruptcy Code section 362, and/or (e) for any other reason for which adequate protection may be granted under the Bankruptcy Code or case law (the "Non-Cash Collateral Diminution in Value Claim"). |
|  | (vi) The Cash Collateral Diminution in Value Claim and the Non-Cash Collateral Diminution in Value Claim shall have recourse to and be payable from all of the Adequate Protection Collateral. |
|  | (vii) The Prepetition Secured Lender shall have the benefit of the Milestones, and financial reporting (each, as set forth herein), which shall continue to remain in effect with respect to the Prepetition Secured Lender following any termination of the DIP Facility. |
|  | The Adequate Protection Payments shall be free and clear of all liens and claims. |
|  | The Adequate Protection Liens shall be in addition to all valid and enforceable liens and security interests existing in favor of the Prepetition Secured Lender and not in substitution thereof. |
|  | Notwithstanding the foregoing, the Prepetition Secured Lender shall be entitled to seek different or additional forms of adequate protection for any reason, including due to any extension of Milestones or failure to satisfy them. |
|  | The DIP Lender only consents to entry of the interim cash collateral order and interim adequate protection to the Prepetition Secured Lender as set forth herein, and reserves all rights with respect to entry of any further adequate protection orders or relief to the Prepetition Secured Lender, including any final cash collateral or adequate protection order. |
| **Reporting to the Prepetition Secured Lender** | The Debtors will provide the Prepetition Secured Lender all financial reporting and other reports and notices owed to the DIP Lender under the DIP Facility. |
|  | The Prepetition Secured Lender and its professional advisors and the DIP Lender and its professional advisors will have the right, at any time, to inspect, audit, examine, check, make copies of, or extract from the books, accounts, checks orders, invoices, bills of lading, correspondence, and other records of the Debtors, and the Debtors will make all of the same available to the Prepetition Secured Lender and its representatives, for such purposes. |
|  | The Debtors will submit weekly reports to the Prepetition Secured Lender and the DIP Lender reflecting (a) all revenues collected in the prior week, (b) all disbursements made in the prior week, (c) balance in the Cash Collateral account, (d) accounts receivable aging and (e) comparison of amounts collected and paid in the prior week with the budgeted collections and expenses. |
|  | The Debtors will provide the Prepetition Secured Lender and the DIP Lender with weekly portfolio loan listings as provided to TreeMac. |

| | |
|---|---|
| | |
| **Waivers and Rights** | The DIP Orders shall provide for customary prepetition secured lender protections, including, but not limited to, waivers regarding (a) sections 506(c), (b) the "equities of the case" exception under 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of marshaling with respect to Prepetition Secured Collateral and all adequate protection collateral.  The Prepetition Secured Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. |
| **Stipulations** | The DIP Orders shall contain stipulations as to, among other things, the amount, validity, enforceability of the loan documents and the secured liens, perfection and priority of the secured indebtedness under the Prepetition Senior Secured Debt and/or liens granted in favor of the secured parties under the Prepetition Senior Secured Debt, including with respect to any actions taken by the Prepetition Secured Lender in respect of the foregoing prior to commencement of the Chapter 11 Cases, subject to a 45-day challenge period. The stipulations shall also provide (a) that the Prepetition Secured Debt constitutes allowed secured claims; (b) that no claims, challenges offsets, defenses, objections or causes of action exist against the Prepetition Secured Lender or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; and (c) for the acknowledgment and enforceability of the relevant subordination agreements. The Prepetition Secured Lender may, but shall not be required to, file a Proof of Claim.<br><br>The Final DIP Order shall provide the full and complete release of the of the DIP Lender, Trevor Lee Ahlberg, Trevor Lee Ahlberg 1997 Trust, and Bomani Business Lending, LLC to the fullest extent permitted by law, subject to a 45-day challenge period from entry of the Final DIP Order with respect to the Prepetition Secured Lender.[8] |
| **Perfection of Prepetition Secured Lender's Liens under DIP Orders** | The DIP Orders shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens or to entitle the Prepetition Secured Lender to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Secured Lender is authorized to file or record, in its sole discretion, as it may deem necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to |

---

[8]  The Secured Prepetition Lender reserves all rights with respect to any releases contemplated or referenced in this Term Sheet, the Interim DIP Order and/or any Plan, which releases shall not become effective, if ever, until after entry of an order by the Bankruptcy Court.  For the avoidance of doubt, no releases are granted pursuant to the Interim DIP Order and all rights are expressly reserved.

39295850v.2

| | |
|---|---|
| | perfect its respective liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed, sent, or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens. The Debtors shall execute and deliver upon reasonable request to the Prepetition Secured Lender, all such financing statements, mortgages, notices, and other documents as the Prepetition Secured Lender may reasonably request. The Prepetition Secured Lender may file a photocopy of the DIP Orders as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument, and all applicable officials shall accept a photocopy of the DIP Orders for filing or recordation for such purpose. |
| **Reservation of Rights** | Nothing in this Term Sheet or the DIP Orders shall be deemed to waive, modify or otherwise impair the rights of the Prepetition Secured Lender, and the Prepetition Secured Lender shall expressly reserve all of its rights and remedies under the Prepetition Senior Secured Loan Documents and applicable law. Without limiting the foregoing, nothing in this Term Sheet or the DIP Orders shall have the effect of, or shall be construed as having the effect of amending or waiving any covenant, term or provision of the Prepetition Senior Secured Loan Documents, or any rights or remedies of the Prepetition Secured Lender thereunder, including (without limitation) any right to require strict compliance with such covenant, term or provision despite any consent or agreement contained in this Term Sheet or the DIP Orders. |
| **Not a Control Person** | The Prepetition Secured Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, or any similar Federal or state statute), and Prepetition Secured Lender's relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind with the Debtor. |

DIP Loan Term Sheet | 17

**<u>Exhibit 2</u>**

**Approved Budget**

**Cottonwood Financial**
*DIP Budget*

| $ in thousands | 1 PROJ | 2 PROJ | 3 PROJ | 4 PROJ | Weeks 1-4 |
| Week Ending: | 1-Mar | 8-Mar | 15-Mar | 22-Mar | TOTAL |
|---|---|---|---|---|---|
| **STARTING CORPORATE CASH** | **447** | **2,028** | **3,560** | **4,184** | **447** |
| **CUSTOMER LOAN CASH FLOW** | | | | | |
| Wisconsin | | | | | |
| Fundings to Customers - WI | (190) | (204) | (181) | (203) | (778) |
| Inflows from Customers - WI | 558 | 378 | 438 | 363 | 1,737 |
| **Total WI Cash Flows** | 368 | 174 | 257 | 160 | 959 |
| Fundings to Customers - ID | (36) | (38) | (36) | (37) | (146) |
| Inflows from Customers - ID | 91 | 74 | 77 | 61 | 302 |
| **Total ID Cash Flows** | 55 | 36 | 42 | 24 | 156 |
| Net TreeMac Cash Flows | (358) | (220) | (70) | (3,703) | (4,351) |
| Maintenance Fees & Net Collections - TX | 1,671 | 1,335 | 1,314 | 1,189 | 5,509 |
| **Total TX Cash Flows** | 1,313 | 1,114 | 1,245 | (2,514) | 1,158 |
| **Net Customer Loan Cash Flow** | **1,735** | **1,324** | **1,544** | **(2,329)** | **2,273** |
| **OPERATING CASH FLOW** | | | | | |
| Payroll & Benefits | (91) | (1,239) | - | (1,189) | (2,520) |
| Contract Labor | - | (88) | (35) | - | (123) |
| Rent | - | - | - | - | - |
| Advertising | - | - | - | (140) | (140) |
| Information Technology | (16) | (95) | (461) | (49) | (621) |
| Underwriting | - | (100) | (100) | (100) | (300) |
| Other Store Level Expenses | (15) | (28) | (53) | (27) | (123) |
| Ordinary Course Professionals | - | - | - | - | - |
| Office Equipment & Supplies | (5) | (5) | (5) | (40) | (55) |
| Collections | - | - | - | - | - |
| Other Operating Expenses | (15) | (16) | (65) | (15) | (111) |
| Referral Fees & Coupons | (10) | (10) | (10) | (10) | (40) |
| Insurance | (2) | - | (15) | - | (17) |
| **TOTAL Operarting Expenses** | **(154)** | **(1,580)** | **(744)** | **(1,571)** | **(4,049)** |
| **OPERATING CASH FLOW** | **1,581** | **(256)** | **799** | **(3,900)** | **(1,775)** |
| **NON-OPERATING CASH FLOW** | | | | | |
| Adequate Protection - Prepetition Lender | - | - | (175) | - | (175) |
| Critical Vendor Payments | | | | | |
| Utility Adequate Assurance Reserve | | (150) | | | (150) |
| Debtor Counsel | | | | | - |
| Debtor CRO | | | | | - |
| Debtor Investment Banker | | (63) | | | (63) |
| Claims/Noticing Agent | | | | | - |
| Committee Professionals | | | | | - |
| **TOTAL Non-Operating Expenses** | **-** | **(213)** | **(175)** | **-** | **(388)** |
| **TOTAL CASH FLOW** | **1,581** | **(468)** | **624** | **(3,900)** | **(2,163)** |
| DIP Advances / (Repayments) | | 2,000 | | | 2,000 |
| **ENDING CASH** | **2,028** | **3,560** | **4,184** | **284** | **284** |
| | | | | | |
| Starting TOTAL Cash | 2,447 | 4,028 | 5,560 | 6,184 | 2,447 |
| Store Level Cash (RESTRICTED) | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Starting CORPORATE Cash | 447 | 2,028 | 3,560 | 4,184 | 447 |
| Net Customer Loan Portfolio Cash Flows | 1,735 | 1,324 | 1,544 | (2,329) | 2,273 |
| Operating Expenses | (154) | (1,580) | (744) | (1,571) | (4,049) |
| Non-Operating Expenses | - | (213) | (175) | - | (388) |
| CORPORATE Cash Before DIP Loan | 2,028 | 1,560 | 4,184 | 284 | (1,716) |
| DIP Advances / (Repayments | - | 2,000 | - | - | 2,000 |
| **Ending CORPORATE Cash** | **2,028** | **3,560** | **4,184** | **284** | **284** |
| | | | | | |
| Professional Fees | | | | | |
| Accured Debtor Counsel | (100) | (100) | (100) | (100) | (400) |
| Accured Debtor CRO | (50) | (50) | (50) | (50) | (200) |
| Accured Noticing/Claims Agent | (30) | (30) | (30) | (30) | (120) |
| Accured Committee Professionals | | (15) | (15) | (15) | (45) |
| **Total Unpaid Professional Fees** | **(180)** | **(195)** | **(195)** | **(195)** | **(765)** |
| **Aggregate Unpaid Professional Fees** | **(180)** | **(375)** | **(570)** | **(765)** | **(765)** |
| | | | | | |
| DIP Loan | | | | | |
| Beginning Balance | - | - | 2,000 | 2,000 | |
| Advances / Repayments | - | 2,000 | - | - | |
| **Ending Balance** | **-** | **2,000** | **2,000** | **2,000** | |