Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:   jbrookner@grayreed.com
    akaufman@grayreed.com
    lwebb@grayreed.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | ) Case No. 24-80035 (SWE) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' EMERGENCY MOTION
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a),
363(b), AND 365(a) AND FED. R. BANKR. P. 6006 (I) AUTHORIZING THE
ASSUMPTION OF AGREEMENTS WITH M & A VENTURES, LLC D/B/A REPAY –
REALTIME ELECTRONIC PAYMENTS; AND (II) GRANTING RELATED RELIEF**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF HAS BEEN REQUESTED FOR A HEARING ON THIS MATTER ON MARCH 28, 2024 AT 10:30 AM.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **THE DEBTORS WILL FILE AND SERVE A SEPARATE NOTICE OF HEARING ON**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

> **THIS MATTER.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE EVERETT'S HOME PAGE. THE MEETING CODE IS 476 420 189. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE EVERETT'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The above-captioned debtors and debtors in possession (the "Debtors") respectfully state the following in support of this motion (this "Motion"):[2]

## Relief Requested

1. By this motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the assumption of those certain REPAY Agreements (as defined below) with M & A Ventures, LLC d/b/a REPAY – Realtime Electronic Payments ("REPAY"), as modified by the terms set forth in the Order, and granting such related relief as set forth herein.

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 6006 of the Federal Rules of

---

[2] Capitalized terms used but not yet defined herein shall have the meanings ascribed to them later in this Motion or in the First Day Declaration, as applicable.

4888-5897-4638

Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9007-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas.

## Background

5. The Debtors operate one of the largest privately held retail consumer finance companies in the United States. Through its Cash Store® brand, the Debtors offer their customers an array of financial products and consumer-lending services, including single payment cash advances, installment cash advances and title loans. The Debtors utilize an innovative mix of financial technology (fintech) through its online customer portal and brick-and-mortar financial products and services through its 181 retail locations across Texas, Idaho and Wisconsin.

6. On February 25, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed.

7. A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in the *Declaration of Karen Nicolaou, Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19] (the "First Day Declaration"), which is incorporated herein by reference.

## The REPAY Agreements

8. Prior to the Petition Date, Debtor Cottonwood Financial Administrative Services LLC ("CFAS") entered into various agreements with REPAY, including that certain *Merchant Application and Agreement*, dated as of April 17, 2015, by and among REPAY, CFAS and

3

4888-5897-4638

SouthState Bank, as successor in interest to National Bank of Commerce ("SouthState Bank") (as amended and supplemented, the "Merchant Agreement"), the *Addendum* thereto dated November 6, 2019 by and among REPAY, CFAS and SouthState Bank (the "Instant Funding Addendum"), and the *Master Services Agreement*, dated March 24, 2020 by and among REPAY and CFAS (the "MSA" and, together with the Merchant Agreement and the Instant Funding Addendum, as may be further supplemented or amended from time to time, the "REPAY Agreements").

9. Under the Merchant Agreement, REPAY agreed to provide credit and debit card processing services to CFAS. These services include facilitating the Debtors' access to cash funds resulting from their customers' credit and debit card loan repayment transactions. These cash funds would then be deposited into a depository account designated by CFAS and as specified in the Merchant Agreement.

10. In all, the processing services provided by REPAY are essential to the Debtors' ongoing business. The credit and debit card processing services provided by REPAY represent approximately 80% of the funds collected from the Debtors' customers to repay the loans serviced by the Debtors. The processing services provided by REPAY under the Instant Funding Addendum provide a faster, safer, and more cost-effective alternative for the Debtors' customers to receive loan proceeds on their existing debit cards, rather than cash or check.

11. In exchange for these services, CFAS agreed, *inter alia,* to pay REPAY for all credit and debit card chargebacks initiated by the Debtors' customers for which SouthState and REPAY will have had to reimburse the card issuing bank (the "Chargeback Repayments"). CFAS also agreed to pay REPAY all agreed upon fees (including card brand interchange for which SouthState and REPAY will have had to reimburse the applicable card brand) and any

4

fines, assessments, charges or penalties imposed by the card brands related to the credit and debit card processing transactions which SouthState and REPAY will have had to reimburse the applicable card brand (collectively, the "Fee Repayments").

12.     Under the Instant Funding Addendum, REPAY agreed to provide services to CFAS, as specified in the Instant Funding Addendum, to facilitate disbursement of loan proceeds to the debit cards of the Debtors' customers ("Instant Funding Disbursements"). CFAS agreed in return, *inter alia*, to establish an account with SouthState Bank from which amounts would be drawn to fund the Instant Funding Disbursements, and established account no. ending 5737 at SouthState Bank for such purpose (the "Instant Funding Account"). The Instant Funding Addendum requires that CFAS have on deposit in the Instant Funding Account sufficient funds to allow the Instant Funding Disbursements to be processed, as well as to satisfy all associated fees related to such transactions (collectively, the "Instant Funding Repayments"). As of the Petition Date, the balance on deposit in the Instant Funding Account was $429,395.61.[3]

13.     Prior to the Petition Date, REPAY would collect daily Chargeback Repayments or monthly Fee Repayments by first initiating a debit to the designated bank account of CFAS. If the amounts available in such account were insufficient to cover such Chargeback Repayments and/or Fee Repayments, REPAY could recover and apply the Chargeback Repayments and Fee Repayments from amounts deducted from deposits made to SouthState Bank by credit or debit card issuers on behalf of the Debtors' customers. The net amount, after such deductions, would be transferred to the Debtors in an account or accounts designated by CFAS.

14.     Prior to the Petition Date, REPAY received and applied amounts to repay the daily Instant Funding Disbursements on the first business day following the business day in

---

[3] The daily account balance of the Instant Funding Account fluctuates regularly based on ordinary course account activity conducted among the parties pursuant to the REPAY Agreements.

5

4888-5897-4638

which such repayments were collected from amounts deducted from funds on deposit in the Instant Funding Account from CFAS. If the amounts in the Instant Funding Account were insufficient to cover the Instant Funding Repayments, REPAY could collect such shortfall in the Instant Funding Repayments from amounts deducted from customers' loan repayment proceeds received by SouthState Bank from the customers' card issuing bank. The same collection process was applied with respect to the monthly fee portion of the Instant Funding Repayments to be collected pursuant to the Instant Funding Addendum. The net amount, after such deductions, was transferred to an account designated by CFAS.

15. The REPAY Agreements contemplate REPAY requesting reserves for certain repayments, such as the Chargeback Repayments. REPAY did not request any such reserves prior to the Petition Date. Moreover, the Debtors have historically remained current under the REPAY Agreements. As of the Petition Date, the only outstanding obligations due to REPAY under the REPAY Agreements were the accrued obligations for Fee Repayments and Chargeback Repayments during the first 25 days in February before the Petition Date. The total prepetition amounts due to REPAY under the REPAY Agreements is $227,153.50. SouthState is holding such amounts in a settlement account at SouthState Bank pending further order of this Court. By this Motion, the Debtors seek authority to apply such amounts in satisfaction of any outstanding prepetition obligations due to REPAY under the REPAY Agreements.

16. On March 21, 2024, the Court entered the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief* (the "Final DIP Order"). Pursuant to Paragraph 32 of the Final DIP Order, the Debtors agreed to establish a REPAY

6

Reserve Account (as defined in the Final DIP Order) and fund said reserve by borrowing $557,162.90 from the DIP Lender. Consistent with Paragraph 32(c) of the Final DIP Order, the Debtors seek authority to establish and manage this REPAY Reserve Account in satisfaction of their obligations under the REPAY Agreements and as adequate assurances of future performance thereunder. For the avoidance of doubt, the total starting balance of the REPAY Reserve will be $557,162.90.[4]

## Basis for Requested Relief

17. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume . . . any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A debtor's assumption of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) ("The bankruptcy court will generally approve that choice [to assume or reject], under the deferential 'business judgment' rule."). The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of "bad faith, whim, or caprice." *See In re Idearc Inc.*, 423 B. R. 138, 162 (Bankr. N.D. Tex. 2009) ("The issue . . . is whether [the debtor's decision] is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.") (quoting *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (internal quotation marks omitted)). Furthermore, under section 363(b)(1) of the Bankruptcy Code, a debtor in possession may use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).

---

[4] Rather than supplementing the REPAY Reserve Account with the $227,153.50 held by SouthState Bank, the Debtors hereby agree to allow REPAY to apply such amount to satisfy the cure amounts due and owing to REPAY under the REPAY Agreements.

7

18. Assumption of an executory contract or an unexpired lease is appropriate where such assumption would benefit the estate. *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."). Upon finding a debtor exercised its sound business judgment in determining that assumption of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the assumption under section 365(a) of the Bankruptcy Code. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("As long as assumption of a lease appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code . . .") (quoting *Allied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982) (alteration in original)).

19. In the present case, assumption of the REPAY Agreements (as modified) will ensure the continuation of the Debtors' business without disruption. As discussed above, REPAY provides essential processing services that represent a substantial portion of the Debtor's loan originations and repayment collections. Without REPAY's services, the Debtors could suffer a potentially catastrophic disruption to their loan repayment activities. Further, without the ability to advance the originated loans to customers' existing debit cards, many customers may elect to do business with competitors who do offer such services.

20. REPAY has indicated that it is unwilling to continue providing services without certain protections afforded under the REPAY Agreements, including reserves to be established and the ability to continue managing funds in the ordinary course of business. In exchange for

4888-5897-4638

the Debtors' assumption of the REPAY Agreements, as modified by the Order, REPAY has agreed to continue to provide these essential services to the Debtors while the Debtors seek to sell their business. REPAY's agreement to continue its longstanding practice of providing card processing services allows the Debtors the opportunity to continue their operations in the ordinary course, without disruption, while the Debtors complete an orderly value-maximizing sale of their assets.

21. Absent assumption of the REPAY Agreements and REPAY's agreement to continue performing under the terms of such agreements during these chapter 11 cases, the Debtors' sale process would be jeopardized. The Debtors' investment banker believes that the most likely buyer for the Debtors' assets is a strategic player that is already part of the consumer finance industry. Assumption of the REPAY Agreements provides potential buyers with the security that the Debtors can continue to broker and service loans to avoid any dissipation in value while the parties negotiate and obtain court approval of an asset purchase agreement. Although a strategic buyer very well may have a relationship with a third-party card servicing company other than REPAY, a buyer of the Debtors' assets may need to enter into a transition services agreement with REPAY for some period of time post-closing to allow for a smooth transition.

22. While assumption of an executory contract like the REPAY Agreements early in the case may be unusual, the Debtors believe that it is warranted under the circumstances. While a typical debtor may delay any decision regarding assumption of executory contracts until later in the case or in conjunction with a sale or plan process, the Debtors' business requires a relationship with a third party, independent card processor. The Debtors do not have a backup provider that can provide the same services as REPAY. Moreover, REPAY is already integrated

into the Debtors' point-of-sale system. The Debtors do not believe that they could locate a replacement card process to provide the specific services procured from REPAY during these chapter 11 cases. Furthermore, any replacement card processer would likely require larger reserves and protections, which the Debtors cannot feasibly provide without significant disruption to their operations. If the Debtors did not seek to assume the REPAY Agreements (as modified), REPAY could exercise remedies that would inhibit the Debtors' ability to continue brokering and servicing the loans, which could in turn compromise the Debtors' sale process.

23. As set forth in the Order, the Debtors and REPAY will each have the ability to terminate the REPAY Agreements in the event the purchaser of the Debtors' assets chooses not to take assignment of the REPAY Agreements or REPAY refuses to consent to such assignment. The termination shall be effective upon five (5) business days written notice to the other parties and entry of a final order approving the sale of the Debtors' assets. In the event of such termination, REPAY would be entitled to (i) an allowed administrative expense claim for obligations under the REPAY Agreements for services provided between the Petition Date and the termination date, and (ii) the Debtors will replenish the REPAY Reserve Account from cash sale proceeds to the original $557,162.90 starting balance discussed above. This mechanism limits future administrative expenses accruing to the estates by virtue of the REPAY Agreements.

24. Moreover, REPAY has agreed that it will continue to operate under the terms of the assumed REPAY Agreements, as modified in accordance with this Motion and the Order submitted herewith (or any other order entered by the Court), and will not demand additional reserves from the Debtors without first seeking relief from the Court. As a result, under the circumstances, there is very little risk to the estates, while the assumption of the REPAY

10

Agreements (as modified) ensures that the Debtors are able to benefit from REPAY's services on terms that ensure alignment of the parties' interests and that value is maximized.

25. Based on the foregoing, the Debtors respectfully submit that their decision to assume the REPAY Agreements benefits their estates, is supported by sound business judgment, and should be approved by the Court.

## Waiver of Bankruptcy Rules 6004 and 6006

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rules 6004(a) and 6006(c) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Notice

27. The will provide notice of this Motion to the following parties or their counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the DIP Lender; (d) counsel to the Prepetition Secured Lender; (e) counsel to REPAY; (f) the United States Attorney's Office for the Northern District of Texas; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other and further relief as may be just and proper.

11

4888-5897-4638

Respectfully submitted this 21st day of March, 2024.

**GRAY REED**

By: *Lydia R. Webb*
Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

### Certificate of Service

I certify that on March 21, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Lydia R. Webb*
Lydia R. Webb

### Certificate of Conference

I certify that Debtors counsel, including myself and my colleagues at Gray Reed, conferred extensively over the past two weeks with counsel for REPAY, counsel for the Debtors' Prepetition Secured Lender, and counsel for the Debtors' DIP Lender. Based on such extensive discussions, the Debtors believe that such parties support the relief sought in this Motion and Order.

*/s/ Lydia R. Webb*
Lydia R. Webb

4888-5897-4638

**Exhibit A**

**Proposed Order**

4888-5897-4638

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | ) ) ) | Case No. 24-80035 (SWE) |
| Debtors. | ) ) ) | (Jointly Administered) |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a),
363(b), AND 365(a) AND FED. R. BANKR. P. 6006 (I) AUTHORIZING THE
ASSUMPTION OF AGREEMENTS WITH M & A VENTURES, LLC D/B/A REPAY –
REALTIME ELECTRONIC PAYMENTS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession (the "Debtors") for entry of an order authorizing the assumption of the REPAY Agreements (as defined in the Motion and as modified by the terms set forth in this Order); and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4888-5897-4638

and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and the record of the hearing on such motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. Pursuant to sections 105(a), 363(b) and 365(a) of the Bankruptcy Code, Cottonwood Financial Administrative Services LLC ("CFAS") is authorized to assume the REPAY Agreements, as modified by this Order. The REPAY Agreements (as modified herein) shall be binding and enforceable against the parties in accordance with their terms. To the extent CFAS was in default of its obligations under the REPAY Agreements as of the Petition Date, any such defaults are cured by the modifications approved herein, and this Order serves as adequate assurances to REPAY of CFAS's future performance under the REPAY Agreements, subject to REPAY's rights to seek additional adequate assurances of CFAS's future performance upon separate motion and hearing before the Court if circumstances warrant, and subject also to all parties' rights to object thereto.

2. In full satisfaction of any outstanding obligations for Chargeback Repayments, Fee Repayments or other monthly fees or charges due as of the Petition Date, REPAY may apply the funds previously held by SouthState Bank in the amount of $227,153.50 toward such balances. Any additional portions of the $227,153.50 held by SouthState Bank or REPAY in excess of the outstanding obligations shall be remitted to the Debtors to deposit into the REPAY Reserve Account (as defined in Paragraph 32 of the Final DIP Order (defined below)). For the avoidance of doubt, the total starting balance of the REPAY Reserve Account shall be $557,162.90.

4888-5897-4638

3. Unless SouthState Bank becomes an Authorized Depository Bank under the *Final Order (I) Authorizing the Debtors to Continue to Operate Their Cash Management System and Perform Customer Transactions and Intercompany Transactions, and (II) Granting Related Relief* (the "Final Cash Management Order"), the maximum daily balance allowed in the Instant Funding Account shall be $250,000. The Debtors shall use best efforts to maintain a balance in the Instant Funding Account of no less than $250,000 at the close of each business day.

4. As adequate assurances of future performance, Paragraph 32 of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying The Automatic Stay, and (V) Granting Related Relief* (the "Final DIP Order") is incorporated herein by reference, and the Debtors and REPAY shall continue to operate under the REPAY Agreements, consistent with the Final DIP Order, and in the same manner as the parties operated thereunder prior to the Petition Date, except Paragraph 32(d) of the Final DIP Order is modified as set forth below:

(a) In the event that the Debtors fail to make any Chargeback Repayments or Fee Repayments when due, before issuing a Proposed Reserve Debit Notice (as defined in the Final DIP Order), REPAY may pay the outstanding Chargeback Repayments and Fee Repayments from amounts held in a settlement account at SouthState Bank containing daily collections of the Debtors' customers from their respective card issuers, *provided, however*, that REPAY shall promptly remit to the Debtors the net amount of such funds to an account designated by CFAS, along with a written accounting of how the amounts withheld were applied.

(b) In the event that the Debtors fail to make any Instant Funding Repayments on the next business day following an Instant Funding Disbursement, before issuing a Proposed Reserve Debit Notice (as defined in the Final DIP Order), REPAY may pay the outstanding Instant Funding Repayments from amounts held in a settlement account at SouthState Bank containing daily collections of the Debtors' customers from their respective card issuers, *provided, however*, that REPAY shall promptly remit to the Debtors the net amount of such funds to an account designated by CFAS, along with a written accounting of how the amounts withheld were applied. If the Instant Funding Account is closed or inoperable for any reason, REPAY shall not be

3

required to transact under the Instant Funding Addendum until the Instant Funding Account becomes operable again as contemplated herein.

(c) If REPAY is unable to collect the outstanding Fee Repayments, Chargeback Repayments, or Instant Funding Repayments using the methods described in paragraph (a) or (b) above, REPAY may then, and only then, seek repayment from the REPAY Reserve Account under the terms set forth in Paragraph 32(d) of the Final DIP Order.

5. Upon entry of this Order, the obligations of CFAS under the REPAY Agreements arising or occurring after the Petition Date shall constitute and be allowed as administrative expenses of the CFAS's bankruptcy estate pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

6. Nothing included or omitted in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates, subject to appropriate notice and a hearing and this Court's approval unless otherwise agreed to by the parties, to assign the Agreement, pursuant to, and in accordance with, the requirements of section 365 of the Bankruptcy Code; *provided*, *however*, that REPAY shall retain any and all rights it has to object to such assignment.

7. In the event a potential purchaser of substantially all of the Debtors' assets does not request assignment of the REPAY Agreements, both REPAY and CFAS shall each have the right to terminate any and all of the REPAY Agreements upon five (5) business days prior written notice to the other parties and entry of a final order approving the sale of substantially all the Debtors' assets. In the event of such termination, REPAY shall be entitled to an allowed administrative expense claim for obligations under the REPAY Agreements between the Petition Date and the termination date. Unless otherwise ordered by the Court, such sale order shall provide for use of cash sale proceeds to replenish the REPAY Reserve Account to the original $557,162.90 starting balance.

4

8. If a purchaser does not take assignment of the REPAY Agreements, REPAY agrees to use reasonable, good faith efforts to enter into a transition services agreement with the purchaser of the Debtors' assets, if requested, with assistance from CFAS, subject to the purchaser's agreement to perform all obligations of CFAS set forth in the REPAY Agreements (as modified herein) during any transition period.

9. Nothing in this Order shall constitute a determination or finding by the Court concerning whether the REPAY Agreements constitute an agreement to provide financial accommodations, as that term is used in 11 U.S.C. § 365(c)(2). All rights of the Debtors and REPAY, or their respective successor in interest, are expressly reserved and preserved to seek or challenge such a finding.

10. Any dispute between CFAS and REPAY arising out of or related to the REPAY Agreements or this Order shall be determined by the Bankruptcy Court.

11. The terms and conditions of this Order are immediately effective and enforceable upon their entry. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

12. CFAS and REPAY are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

<u>Submitted by:</u>

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:         jbrookner@grayreed.com
                   akaufman@grayreed.com
                   lwebb@grayreed.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

6

4888-5897-4638