IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | § § § | Case No. 24-80035 (SWE) |
| Debtors. | § § § | (Jointly Administered) |

**DECLARATION OF KAREN NICOLAOU,
CHIEF RESTRUCTURING OFFICER, IN
SUPPORT OF DEBTORS' EMERGENCY MOTION
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a),
363(b), AND 365(a) AND FED. R. BANKR. P. 6006 (I) AUTHORIZING THE
ASSUMPTION OF AGREEMENTS WITH M & A VENTURES, LLC D/B/A REPAY –
REALTIME ELECTRONIC PAYMENTS; AND (II) GRANTING RELATED RELIEFF**

Karen Nicolaou declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:[2]

1. I am the Chief Restructuring Officer of Cottonwood Financial Ltd. ("Cottonwood" and each of the other above-captioned affiliated debtors and debtors in possession, collectively the "Debtors" or the "Company"). I have held this position since December 8, 2023.

2. As Chief Restructuring Officer, I am responsible for overseeing the operations and financial activities of the Debtors, including, but not limited to, monitoring cash flow, business relationships, workforce issues, and financial planning. As a result of my tenure with the Debtors and my turnaround experience, my review of public and non-public documents, and my

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion to Assume (as defined below).

1

discussions with other members of the Company's management team, I am generally familiar with the Company's business and financial condition. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Company's management team and its advisors.

3. I am over the age of 18, and I am authorized to submit this declaration on behalf of the Debtors in support of their *Debtors' Emergency Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 365(a) and Fed. R. Bankr. P. 6006 (i) Authorizing the Assumption of Agreements with M & A Ventures, LLC D/B/A Repay Realtime Electronic Payments; and (ii) Granting Related Relief* [Docket No. 147] (the "Motion to Assume"), filed on Thursday, March 21, 2024.[3]

4. References to the Bankruptcy Code (as defined herein), the chapter 11 process, and related legal matters are based on my understanding of such as explained to me by counsel. If called upon to testify, I would testify competently to the facts set forth in this declaration.

## **Qualifications**

5. I have been employed as a Managing Director at Harney Partners ("Harney") since 2018. I am a certified public accountant and certified valuation analyst with over 30 years of experience providing restructuring advisory and management services to companies experiencing financial distress. I have advised debtors, secured lenders, trade creditors and equity holders in both out of court and in court proceedings. I have extensive experience in U.S. Bankruptcy Courts (including the Northern District of Texas) and have been involved in numerous chapter 11 cases. In addition, I have served as an expert witness on financial and restructuring issues in various other matters.

---

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion to Assume.

2

4886-8046-0466

6. In addition to working with the Debtors, I have played various roles with respect to both company-side and creditor-side engagements. Representative cases include *In re The LaSalle Group, Inc., et al.*, Case No. 19-31484-sgj-11 (Bankr. N.D. Tex.) (CRO); *In re Rockies Region 2006 Limited Partnership, et al.*, Case No. 18-33513-sgj-11 (Bankr. N.D. Tex.) (Debtors' Responsible Party); *In re Colorado 2002B Limited Partnership, et al.*, Case No. 16-33743-bjh-11 (Bankr. N.D. Tex.) (same); and *In re Eastern 1996D Limited Partnership, et al.*, Case No. 13-34773-hdh-11 (Bankr. N.D. Tex.) (same).

### The REPAY Agreements

7. A detailed description of the REPAY Agreements and the Debtors' obligations thereunder are set forth in the Motion to Assume. I have reviewed the facts recited in paragraphs 8-16 of the Motion to Assume. I believe those factual recitations are accurate and adopt them as my own testimony.

8. The proposed Order and the Final DIP Order contemplates the following treatment for REPAY, among other things:

   a. The Debtors shall deposit $557,162.90 in cash into a new debtor in possession deposit account as a reserve for the benefit of REPAY (the "REPAY Reserve Account"). The REPAY Reserve Account was contemplated by the REPAY Agreements and is being established at REPAY's request for adequate assurance of future performance under the REPAY Agreements. REPAY may debit the REPAY Reserve Account to pay any post-petition fees, chargebacks, or other amounts accruing after the Petition Date and coming due under the REPAY Agreements, upon notice to the Debtors and the DIP Lender and on the terms set forth in paragraph 32(d) of the Final DIP Order and paragraph 4 of the proposed Order;

   b. REPAY shall apply the $227,153.50 in funds previously held by SouthState Bank toward the Debtors' prepetition balances owed to REPAY;

   c. The Debtors shall use best efforts to maintain minimum end of day balances in the Instant Funding Account of $250,000; and

3

   d. In the event that the Debtors fail to make any Chargeback Repayments, Fee Repayments or Instant Funding Repayments when due, before issuing a Proposed Reserve Debit Notice (as defined in the Final DIP Order), REPAY may pay the outstanding amounts from funds held in a settlement account at SouthState Bank containing daily collections of the Debtors' customers from their respective card issuers, as set forth more fully in paragraph 4 of the proposed Order. This is consistent with the parties' prepetition practice.

  9. It is my business judgment, based on my experience as detailed above, that assumption of the REPAY Agreements (as modified) would benefit the Debtors' estates and is in the best interest of the Debtors' creditors and all parties in interest.

  10. Assumption of the REPAY Agreements (as modified) will ensure the continuation of the Debtors' business without disruption. REPAY provides essential processing services that impact both the origination loans to, and repayment of loan principal, interest, and fees by, the Debtors' customers. Without REPAY's services, the Debtors could suffer a potentially catastrophic disruption to their loan repayment activities, as well as their business as a whole. Further, without the ability to advance the originated loans to customers' existing debit cards, many customers may elect to do business with competitors who do offer such services.

  11. REPAY has indicated that it is unwilling to continue providing services without certain protections afforded under the REPAY Agreements, including reserves to be established and the ability to continue managing funds in the ordinary course of business. In exchange for the Debtors' assumption of the REPAY Agreements, as modified in the manner set forth in the Motion to Assume and proposed Order, REPAY has agreed to continue to provide these essential services to the Debtors while the Debtors seek to sell their business. REPAY's agreement to continue its longstanding practice of providing card processing services allows the Debtors the opportunity to continue their operations in the ordinary course, without disruption, while the Debtors complete an orderly value-maximizing sale of their assets.

12. Absent assumption of the REPAY Agreements and REPAY's agreement to continue performing under the terms of such agreements during these chapter 11 cases, the Debtors' sale process would be jeopardized. The Debtors' investment banker believes that the most likely buyer for the Debtors' assets is a strategic player that is already part of the consumer finance industry. Assumption of the REPAY Agreements provides potential buyers with the security that the Debtors can continue to broker and service loans to avoid any dissipation in value while the parties negotiate and obtain court approval of an asset purchase agreement. Although a strategic buyer very well may have a relationship with a third-party card servicing company other than REPAY, a buyer of the Debtors' assets may need to enter into a transition services agreement with REPAY for some period of time post-closing to allow for a smooth transition.

13. While assumption of an executory contract like the REPAY Agreements early in the case may be unusual, the Debtors believe that it is warranted under the circumstances. While a typical debtor may delay any decision regarding assumption of executory contracts until later in the case or in conjunction with a sale or plan process, the Debtors' business requires a relationship with a third-party payment processor. The Debtors do not have a backup provider that can provide the same services as REPAY. Moreover, REPAY is already integrated into the Debtors' point-of-sale system. The Debtors do not believe that they could locate a replacement card processer to provide the specific services procured from REPAY during these chapter 11 cases without significant disruption to the business and material diminution in the sale value of their assets. Furthermore, any replacement card processer would likely require larger reserves and protections, which the Debtors cannot feasibly provide without significant disruption to their operations. If the Debtors did not seek to assume the REPAY Agreements (as modified), REPAY could exercise

5

remedies that would inhibit the Debtors' ability to continue brokering and servicing the loans, which could in turn compromise the Debtors' sale process.

14. As set forth in the Order, the Debtors and REPAY will each have the ability to terminate the REPAY Agreements in the event the purchaser of the Debtors' assets chooses not to take assignment of the REPAY Agreements or REPAY refuses to consent to such assignment. The termination shall be effective upon five (5) business days written notice to the other parties and entry of a final order approving the sale of the Debtors' assets. In the event of such termination, REPAY would be entitled to (i) an allowed administrative expense claim for obligations under the REPAY Agreements for services provided between the Petition Date and the termination date, and (ii) the Debtors will replenish the REPAY Reserve Account from cash sale proceeds to the original $557,162.90 starting balance discussed above. This mechanism limits future administrative expenses accruing to the estates by virtue of the REPAY Agreements.

15. Moreover, REPAY has agreed that it will continue to operate under the terms of the assumed REPAY Agreements, as modified in accordance with the Motion to Assume and the proposed Order (or any other order entered by the Court), and will not demand additional reserves from the Debtors without first seeking relief from the Court. As a result, under the circumstances, there is very little risk to the estates, while the assumption of the REPAY Agreements (as modified) ensures that the Debtors are able to benefit from REPAY's services on terms that ensure alignment of the parties' interests and that value is maximized.

16. Based on the foregoing, the Debtors respectfully submit that their decision to assume the REPAY Agreements benefits their estates, is supported by sound business judgment, and should be approved by the Court.

4886-8046-0466

Main Document    Page 7 of 7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 27th day of March, 2024.

*/s/ Karen Nicolaou*
Karen Nicolaou
Chief Restructuring Officer
