**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| COTTONWOOD FINANCIAL LTD., *et al.*,[1] | § | Case No. 24-80035 (SWE) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:    jbrookner@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com

*Counsel to the Debtors*
*and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtors' federal tax identification number are as follows: Cottonwood Financial Ltd. (1001); Cottonwood Financial Administrative Services, LLC (7228); Cottonwood Financial Texas, LLC (9059); Cottonwood Financial Idaho, LLC (5651); Cottonwood Financial Wisconsin, LLC (7075). The Debtors' principal offices are located at 2100 W Walnut Hill Lane, Suite 300, Irving, TX 75038.

## <u>TABLE OF CONTENTS</u>

**ARTICLE I DEFINITIONS AND INTERPRETATION** ................................................................1
    A.    Definitions...........................................................................................................1
    B.    Rules of Interpretation and Construction. ............................................................6

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS** ...................................................7
    A.    DIP Facility Claim. ............................................................................................7
    B.    Administrative Claims. .......................................................................................7
    C.    Professional Fee Claims......................................................................................8
    D.    U.S. Trustee Fees. ..............................................................................................8
    E.    Priority Tax Claims.............................................................................................9

**ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ..................9

**ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS** ........................10
    A.    Class 1 – Priority Non-Tax Claims ...................................................................10
    B.    Class 2 – Prepetition Secured Lender's Secured Claims....................................10
    C.    Class 3 – Other Secured Claims. .......................................................................11
    D.    Class 4 – General Unsecured Claims. ................................................................11
    E.    Class 5 – Intercompany Claims. ........................................................................11
    F.    Class 6 – Equity Interests..................................................................................11

**ARTICLE V IMPAIRMENT – ACCEPTANCE OR REJECTION OF THE PLAN** ........11
    A.    Classes Entitled to Vote....................................................................................11
    B.    Class Acceptance Requirement. .........................................................................12
    C.    Cramdown..........................................................................................................12
    D.    Elimination of Classes. .....................................................................................12

**ARTICLE VI MEANS OF IMPLEMENTATION** ................................................................12
    A.    Limited Substantive Consolidation. ..................................................................12
    B.    Sources of Consideration for Plan Distributions. ..............................................12
    C.    Cancellation of Existing Securities. ..................................................................13
    D.    Corporate Action. .............................................................................................13
    E.    Retained Causes of Action. ...............................................................................13
    F.    Effectuating Documents; Further Transactions...................................................14
    G.    Exemption from Certain Transfer Taxes. ...........................................................14

**ARTICLE VII CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN** ...14
    A.    Conditions to Confirmation of Plan. .................................................................14
    B.    Conditions to Effective Date of Plan..................................................................15
    C.    Waiver of Conditions Precedent........................................................................15
    D.    Effect of Failure of Conditions. ........................................................................15
    E.    Reservation of Rights........................................................................................16

**ARTICLE VIII EFFECT OF CONSUMMATION**.................................................................16
    A.    Revesting of Assets. ..........................................................................................16
    B.    Exculpation. ......................................................................................................16
    C.    Releases by the Debtors. ....................................................................................17
    D.    Injunction and Stay............................................................................................17
    E.    Gate Keeping. ...................................................................................................18
    F.    Setoffs and Recoupment. ...................................................................................18
    G.    Compromise of Controversies. ..........................................................................18
    H.    Rejection of Contracts and Leases. ....................................................................18

**ARTICLE IX RETENTION OF JURISDICTION**.................................................................19

**ARTICLE X MISCELLANEOUS** ..........................................................................................20
    A.    Filing of Additional Documents........................................................................20
    B.    Schedules, Exhibits and Plan Supplement Incorporated. ..................................20

i

| | | |
|---|---|---|
| C. | Amendment or Modification of the Plan................................................................. | 20 |
| D. | Inconsistency........................................................................................................... | 21 |
| E. | Expedited Tax Determination.................................................................................. | 21 |
| F. | Binding Effect......................................................................................................... | 21 |
| G. | Severability............................................................................................................. | 21 |
| H. | No Admissions. ....................................................................................................... | 21 |
| I. | No Payment of Attorneys' Fees.............................................................................. | 21 |
| J. | Notices. ................................................................................................................... | 22 |
| K. | Governing Law........................................................................................................ | 22 |

ii

The Debtors Cottonwood Financial Ltd., Cottonwood Financial Administrative Services, LLC, Cottonwood Financial Texas, LLC, Cottonwood Financial Idaho, LLC, and Cottonwood Financial Wisconsin, LLC jointly propose this *Debtors' Joint Chapter 11 Plan of Liquidation* pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

*A.    Definitions.*

For the purpose of this Plan, the following terms shall have the respective meanings set forth below:

1.    *Administrative Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Case pursuant to sections 503(b) or 507 of the Bankruptcy Code.

2.    *Administrative Claim Bar Date* means the deadline for the filing of any and all Administrative Claims, which shall be the first Business Day that is at least twenty-eight (28) days after the Effective Date.

3.    *Administrative Claim Reserve* means the reserve established on or before the Effective Date by the Debtors, with the Prepetition Secured Lender's written consent, from any and all available sources to be used solely for payment of Administrative Claims once such Administrative Claims become Allowed.

4.    *Allowed* means, with reference to any Claim or Equity Interest, any Claim or Equity Interest (i) for which a proof of claim or proof of interest has been filed and as to which no objection has been made or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (ii) which appears in the Debtors' Schedules and is not listed as contingent, liquidated or disputed, (iii) which is allowed by Final Order of the Bankruptcy Court, or (iv) which is expressly allowed under this Plan.

5.    *APA* means that certain Asset Purchase Agreement by and among Axcess Financial Holdings, Inc. and the Debtors dated May 1, 2024, as amended or supplemented and approved pursuant to the Sale Order.

6.    *Assets* means property of the Debtors' Estates and proceeds thereof.

7.    *Avoidance Actions* means any and all actual or potential avoidance, recovery, subordination or other claims, causes of action or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including claims, causes of action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s), cause(s) of action or remedy(ies) were commenced prior to the Effective Date.

8.        *Ballot* means the ballot provided to holders of Claims to indicate their votes to accept or reject the Plan.

9.        *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

10.        *Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Cases.

11.        *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

12.        *Bar Date* means the last date to file proofs of claim against the Debtors, which is July 5, 2024 for all creditors except Governmental Units, and August 23, 2024 for Governmental Units.

13.        *Business Day* means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

14.        *Cash* means legal tender of the United States of America.

15.        *Causes of Action* means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, owned by or otherwise accruing to the Debtors and their Estates, whether arising before, on, or after the Petition Date.

16.        *Chapter 11 Cases* means the above-captioned jointly administered chapter 11 bankruptcy cases of the Debtors.

17.        *Claim* means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

18.        *Class* means any group of Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

19.        *Collateral* means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

4881-9366-8033

20.      *Conditional Approval Order* means the Bankruptcy Court's *Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling a Combined Confirmation Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Debtors' Plan, (III) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto, and (IV) Granting Related Relief.*

21.      *Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

22.      *Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

23.      *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

24.      *CRO* means Karen Nicolaou, the duly appointed Chief Restructuring Officer in these Chapter 11 Cases.

25.      *Debtor* means any one of the Debtors, as the context may require.

26.      *Debtors* means Cottonwood Financial Ltd., Cottonwood Financial Administrative Services, LLC, Cottonwood Financial Texas, LLC, Cottonwood Financial Idaho, LLC, and Cottonwood Financial Wisconsin, LLC, collectively, in their capacities as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

27.      *DIP Facility* means the senior secured postpetition financing facility approved by the DIP Order and as amended by the Sale Order.

28.      *DIP Facility Claim* means the Claim of the DIP Lender under the DIP Facility and the DIP Order, including all amounts in principal, interest, and fees owed under the DIP Facility, Claims related to adequate protection, and all reasonable and documented out-of-pocket fees, costs, disbursements, and expenses of the DIP Lender and of the DIP Lender's counsel.

29.      *DIP Lender* means Nehimba Holdings, LLC, in its capacity as DIP Lender (as that term is defined in the DIP Order).

30.      *DIP Order* means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket Nos. 153 and 157] entered by on March 22, 2024.

31.      *Disclosure Statement* means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

32.      *Effective Date* means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in ARTICLE VII.B hereof shall have been satisfied or waived as provided in ARTICLE VII.C hereof; *provided*, *however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

33.      *Equity Interest* means any "equity security," as that term is defined in section 101(16) of the Bankruptcy Code in respect of the Debtors, including the general partnership interest of Cottonwood Financial Management, Inc. in Debtor Cottonwood Financial Ltd.

34.      *Estates* means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

35.      *Exculpated Parties* means (1) the Debtors, (2) Trevor L. Ahlberg, solely in his capacity as the Chief Executive Officer and principal of the Debtors and their general partner Cottonwood Financial Management, Inc., and (3) Karen G. Nicolaou, in her capacity as the Debtors' Chief Restructuring Officer.

36.      *Final Decree* means the decree contemplated by Bankruptcy Rule 3022.

37.      *Final Order* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

38.      *General Unsecured Claim* means any Claim against a Debtor that is not an Administrative Claim, a Priority Tax Claim, a DIP Facility Claim, a Priority Non-Tax Claim, a Prepetition Lender Secured Claim, a Professional Fee Claim, an Other Secured Claim, or an Equity Interest.

39.      *Governmental Unit* has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

40.      *Intercompany Claim* means a claim held by one Debtor against another Debtor.

4

4881-9366-8033

41.     *Local Rules* means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Northern District of Texas, as the same may be amended or modified from time to time.

42.     *Other Secured Claim* means a Secured Claim that is not a Prepetition Lender Secured Claim.

43.     *Petition Date* means February 25, 2024.

44.     *Permitted Lien(s)* has the meaning as defined in Article I of the APA.

45.     *Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

46.     *Plan* means this Chapter 11 Plan, as the same may be amended, supplemented or otherwise modified from time to time, including any exhibits and schedules hereto.

47.     *Plan Supplement* means the compilation of documents and forms of documents, schedules and exhibits to be filed as set forth in the Conditional Approval Order and as may be amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, containing, without limitation any documents necessary for the execution and implementation of the Plan.

48.     *Prepetition Secured Lender* means Third Coast Bank, SSB, in its capacity as lender pursuant to that certain loan agreement with Debtor Cottonwood Financial Ltd, dated as of December 9, 2020, with Debtors Cottonwood Financial Texas, LLC and Cottonwood Financial Administrative Services, LLC as guarantors of such loan.

49.     *Prepetition Secured Lender Claim* means the Secured Claim held by the Prepetition Secured Lender arising pursuant to the Prepetition Loan Documents which, as of the First Petition Date, aggregate $26,653,286.61, which was stipulated and allowed under the terms of the DIP Order and includes the Diminution in Value Claims for Cash Collateral and Non-Cash Collateral as provided and defined under the DIP Order.  For the avoidance of doubt, such amount shall be deemed an Allowed Claim under this Plan.

50.     *Priority Claim Reserve* means the reserve established on or before the Effective Date by the Debtors, with the Prepetition Secured Lender's written consent, from any and all available sources to be used solely for payment of Priority Non-Tax Claims and Priority Tax Claims once such Claims become Allowed.

51.     *Priority Non-Tax Claim* means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4) or (5) of the Bankruptcy Code and that is not a Claim or a Priority Tax Claim.

52.     *Priority Tax Claim* means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

5

53.     *Professional Fee Claim* means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Cases.

54.     *Professional Person* means any Person retained or to be compensated by the Debtors pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

55.     *Purchaser* shall mean Axcess Financial Holdings, Inc.

56.     *Retained Causes of Action* means Causes of Action identified in the Plan Supplement to be reserved, retained and assigned pursuant to this Plan.

57.     *Sale* means the transaction or transactions contemplated under the APA and approved by the Bankruptcy Court pursuant to the Sale Order.

58.     *Sale Order* means the Bankruptcy Court's *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims and Interests; and (II) Granting Related Relief* [Docket No. 301].

59.     *Schedules* means, collectively, Schedules A through J and the Statement of Financial Affairs, as filed by each Debtor in the Chapter 11 Cases, as the same may be amended from time to time.

60.     *Secured Claim* means a Claim, other than a Prepetition Secured Lender Claim, secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor in question and the holder of such Claim.

61.     *TreeMac Stipulation* means the *Stipulation and Agreed Order Among the Debtors, TreeMac Funding Group, LLC, and Third Coast Bank* [Docket No. 316].

62.     *Voting Deadline* means the date by which Ballots for accepting or rejecting the Plan must be received, as set forth under the Conditional Approval Order.

63.     *Wind Down Officer* shall be the Debtors' CRO who shall have the full and final authority to administer the terms of the Plan.

## B.     *Rules of Interpretation and Construction.*

(a)     Interpretation.  Unless otherwise specified herein, all section, article, and exhibit references in the Plan are to the respective Section in, Article of, and Exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b)     Construction and Application of Bankruptcy Code Definitions.  Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the

same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c)    <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in the Plan.

(d)    <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**
**TREATMENT OF UNCLASSIFIED CLAIMS**

*A.    DIP Facility Claim.*

The DIP Facility Claim shall be paid in accordance with the terms of the Sale Order. To the extent any amounts remain unpaid under the DIP Facility and DIP Order, the Debtors shall pay any such remaining amounts due on or before the Effective Date. For the avoidance of doubt, the releases set forth in Paragraph 30 of the DIP Order shall remain in full effect and will not be modified, altered, or abridged in any way as a result of this Plan or the Confirmation Order. In addition to such releases previously approved under the DIP Order, upon the closing of the Sale and payment of the DIP Facility Claim, the Debtors and the DIP Lender shall be deemed to have released and discharged all rights, obligations, and defenses against one another arising from or related to the DIP Order and the DIP Facility Claim from and after the Petition Date.

*B.    Administrative Claims.*

All Administrative Claims against the Debtors, other than Professional Fee Claims and the DIP Facility Claim, shall be treated as follows:

(a)    <u>Time for Filing</u>. All holders of Administrative Claims, other than the DIP Lender or Professional Persons holding Professional Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims on or before the Administrative Claim Bar Date. Any such request must be served on the Debtors, their counsel, and counsel to the Prepetition Secured Lender, and must, at a minimum, set forth (i) the name of the holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the legal and factual bases for the Administrative Claim. A failure to file any such request in a timely fashion will result in the Administrative Claim in question being discharged and its holder forever barred from asserting such Administrative Claim against the Debtors or any other Person.

(b)    <u>Objection and Allowance</u>. An Administrative Claim (other than the DIP Facility Claim or Professional Fee Claims) for which a request for payment has been properly filed shall become an Allowed Administrative Claim unless an objection is filed by the date that is thirty (30) days after a request for payment of such Administrative Claim is filed in accordance with subsection (a) above. If an objection is timely filed, the Administrative Claim in question shall

4881-9366-8033

become an Allowed Administrative Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c)     Payment.  Except to the extent that a holder of an Allowed Administrative Claim (other than the DIP Facility Claim or Professional Fee Claims) agrees to a different treatment of such Claim, each holder of an Allowed Administrative Claim shall receive, on account of and in full satisfaction of such Claim, Cash from the Administrative Claim Reserve in an amount equal to the Allowed amount of such Administrative Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) fifteen (15) days after entry of an order by the Bankruptcy Court allowing such Administrative Claim.  Allowed Administrative Claims shall be paid from the Administrative Claim Reserve. To the extent the funds remaining in the Administrative Claim Reserve are insufficient to pay the Allowed Administrative Claims in full, the Debtors shall provide written notice to the Prepetition Secured Lender, and the Prepetition Secured Lender shall have five (5) business days to raise objection to the proposed payment out of the Debtors' remaining Cash.

*C.     Professional Fee Claims.*

(a)     Time for Filing.  Every Professional Person holding a Professional Fee Claim, other than the Professional Fee Claim of the Prepetition Secured Lender (as set forth below), that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order approving the same shall file a final application for payment of fees and reimbursement of expenses no later than Administrative Claim Bar Date.  Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

(b)     Objections and Allowance.  The last date to object to any final fee application shall be the twenty-fourth (24th) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, if necessary and as the Bankruptcy Court's calendar permits, after consultation with counsel to the Debtors and the Prepetition Secured Lender.

(c)     Payment.  Professional Fee Claims shall be paid from the Administrative Claim Reserve, and to the extent amounts remaining in the Administrative Claim Reserve are insufficient to pay the Allowed Professional Fee Claims in full, the Debtors shall provide written notice to the Prepetition Secured Lender, and the Prepetition Secured Lender shall have five (5) business days to raise objection to the proposed payment out of the Debtors' remaining Cash.

(d)     Payment of Prepetition Secured Lender's Professional Fees.  Any amounts due to the Prepetition Secured Lender's or the DIP Lender's professionals shall be paid from the Administrative Claim Reserve on the Effective Date, or within a reasonable time thereafter, pursuant to the DIP Order and the Sale Order without having to file a final fee application.

*D.     U.S. Trustee Fees.*

All fees payable under section 1930 of title 28 of the United States Code shall be paid from the Debtors' available Cash in the Administrative Claim Reserve on or before the Effective Date

or when such amounts are due in the ordinary course.  All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid by the Debtors.

**E.    *Priority Tax Claims.***

(a)    <u>Time for Filing</u>.  Holders of Priority Tax Claims shall file such Priority Tax Claims on or before the applicable Bar Date.  Nothing in this Plan shall alter or extend such Bar Date.

(b)    <u>Objections and Allowance</u>.  The last date to object to any timely filed Priority Tax Claim shall be thirty (30) days after the Government Bar Date, unless extended by an order of the Bankruptcy Court or an agreement with the holder of such Priority Tax Claim.

(c)    <u>Payment</u>.  Allowed Priority Tax Claims shall be paid from the Priority Claim Reserve, and to the extent amounts remaining in the Priority Claim Reserve are insufficient to pay the Allowed Priority Tax Claims in full, the Debtors shall provide written notice to the Prepetition Secured Lender, and the Prepetition Secured Lender shall have five (5) business days to raise objection to the proposed payment out of the Debtors' remaining Cash.

(d)    <u>Retention of Liens</u>.  Any Allowed Priority Tax Claim that is not a Permitted Lien under the APA shall attach to the portion of the Debtors' available Cash resulting from the Sale attributable to the property against which an applicable lien, in the order of their priority, with the same validity, force, and effect, subject to any claims and defenses the Debtors and Estates may possess with respect thereto.

(e)    <u>Interest</u>.  To the extent interest is required to be paid on any Priority Tax Claim, the rate of such interest shall be the rate determined under applicable nonbankruptcy law, as set forth in section 511 of the Bankruptcy Code.  To the extent the holder of an Allowed Priority Tax Claim has a Lien on a Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

<u>**ARTICLE III**</u>
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

All Claims against, and Equity Interests in, the Debtors are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| *Class 2* | ***Prepetition Secured Lender Claim*** | *Impaired* | *Yes* |
| *Class 3* | ***Other Secured Claims*** | *Impaired* | *Yes* |
| Class 4 | General Unsecured Claims | Impaired | No (deemed to reject) |

9

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 5 | Intercompany Claims | Impaired | No (deemed to reject) |
| Class 6 | Equity Interests | Impaired | No (deemed to reject) |

Administrative Claims, Professional Fee Claims, DIP Lender Claims, and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code.  Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of this Plan.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

*A.      Class 1 – Priority Non-Tax Claims*

The Debtors or the Prepetition Secured Lender may object to any Priority Non-Tax Claims on or before thirty (30) days after the Effective Date, unless such deadline is extended by an order of the Bankruptcy Court or agreement with the holder of the applicable Priority Non-Tax Claim. Except to the extent that a holder of an Allowed Priority Non-Tax Claim against a Debtor agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, payment in full in Cash from the Priority Claim Reserve on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) fifteen (15) days after such Priority Non-Tax Claim becomes Allowed.  To the extent amounts remaining in the Priority Claim Reserve are insufficient to pay the Allowed Priority Non-Tax Claims in full, the Debtors shall provide written notice to the Prepetition Secured Lender, and the Prepetition Secured Lender shall have five (5) business days to raise objection to the proposed payment out of the Debtors' remaining Cash.

*B.      Class 2 – Prepetition Secured Lender's Secured Claims.*

In final satisfaction of the Prepetition Secured Lender Claim, the Prepetition Secured Lender shall receive: (i) on the closing date of the Sale, all amounts required under the Sale Order and TreeMac Stipulation, including a one-time Cash payment in the amount of $1,300,000.00; (ii) on or as soon as practicable following the Effective Date, (a) a one-time Cash payment of the total amount of Cash held by the Debtors on the Effective Date, minus the amounts necessary and agreed upon by the Prepetition Secured Lender to establish and fund the Administrative Claim Reserve and the Priority Claim Reserve as required in ARTICLE II hereof, and (b) the assignment and transfer of the Debtors' Retained Causes of Action pursuant to section 363(b) of the Bankruptcy Code in a form of assignment approved by the Prepetition Secured Lender and included in a Plan Supplement; and (iii) upon entry of a Final Decree in these Chapter 11 Cases, all remaining Cash owned or held by the Debtors, wherever located, in all of the Debtors' bank accounts (including money, coins or notes held in foreign bank accounts in non-U.S. currency or tender), including the net proceeds realized and any funds held back from the sale of the Debtors'

10

assets from the Petition Date through the entry of a Final Decree. All rights of setoff and recoupment are reserved by the Prepetition Secured Lender.

The Debtors shall provide the Prepetition Secured Lender with reasonable access to the books and records of the Debtors concerning the Retained Causes of Action.

**C.** *Class 3 – Other Secured Claims.*

For each holder of an Allowed Other Secured Claim that holds a first priority Lien on any Collateral as of the Effective Date, such holder shall receive the Collateral on the Effective Date or as soon as practicable thereafter. To the extent the value of the Collateral securing an Allowed Other Secured Claim is insufficient to satisfy the Allowed Other Secured Claim, such holder of such Allowed Other Secured Claim will receive a Class 4 General Unsecured Claim for the remaining portion of its Other Secured Claim, which amount shall be treated as an Allowed General Unsecured Claim pursuant in ARTICLE IV.D of this Plan.

**D.** *Class 4 – General Unsecured Claims.*

Holders of General Unsecured Claims shall receive and retain nothing under the Plan on account of such General Unsecured Claims. Holders of General Unsecured Claims are conclusively deemed to have rejected the Plan.

**E.** *Class 5 – Intercompany Claims.*

On the Effective Date, all Intercompany Claims against a Debtor shall be settled, cancelled, released, and discharged without payment or distribution of any Cash or other property. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan.

**F.** *Class 6 – Equity Interests.*

On the Effective Date, all Equity Interests in each Debtor shall be cancelled and of no further force or effect. Holders of Equity Interests shall neither retain nor receive any property under the Plan on account of such Equity Interests.

<u>**ARTICLE V**</u>
**IMPAIRMENT – ACCEPTANCE OR REJECTION OF THE PLAN**

**A.** *Classes Entitled to Vote.*

The holders of Claims in Class 1 are unimpaired and are conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. The holders of Claims in Class 2 and Class 3 are impaired and entitled to vote to accept or reject the Plan. The holders of Claims and Equity Interests in Classes 4, 5, and 6 are impaired and will neither receive nor retain any property under the Plan. Accordingly, such holders of Claims and Equity Interests in Classes 4, 5, and 6 are conclusively deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

4881-9366-8033

**B.**    *Class Acceptance Requirement.*

A Class of impaired Claims entitled to vote on the Plan shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan.  A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

**C.**    *Cramdown.*

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

**D.**    *Elimination of Classes.*

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether such Class has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

<u>**ARTICLE VI**</u>
**MEANS OF IMPLEMENTATION**

**A.**    *Limited Substantive Consolidation.*

(a)    As a result of the DIP Order, the Plan provides for recoveries on account of Allowed Claims in Classes 1, 2, and 3 regardless of the Debtor entity against which such Allowed Claims are asserted.  The Debtors shall not be consolidated for any other purpose.  To the extent necessary, the Plan shall serve as a motion seeking, and entry of the Confirmation Order shall constitute, the approval, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, effective as of the Effective Date, of the limited consolidation for voting and distribution on account of Allowed Claims in Classes 1, 2, and 3.

(b)    For the avoidance of doubt, the limited consolidation described in this Section shall not affect the legal and corporate structures of the Debtors.  In addition, such consolidation shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code.

**B.**    *Sources of Consideration for Plan Distributions.*

All monetary distributions under this Plan will be made by the Debtors from Cash available from and after the Effective Date.

4881-9366-8033

**C.**     *Cancellation of Existing Securities.*

As soon as practicable after the Effective Date, except as otherwise provided for herein or any other document incorporated in the Plan, all Equity Interests and any other certificate, security, share, note, bond, indenture, purchase right, option, warrant, certificates of designations or other instrument or documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest, to the extent not already cancelled, shall be deemed cancelled and of no further force or effect, without the requirement for any further action on the  part of the Bankruptcy Court or any other Person.  As soon as practicable following the Effective Date, the Wind Down Officer, on behalf of the Debtors, shall take any and all steps necessary to complete the corporate dissolution of the Debtors.  Pending the completion of the dissolution of the Debtors by the Wind Down Officer, the Debtors and the Equity Interests therein may continue to exist for the sole purpose of allowing the Wind Down Officer to implement the terms and provisions of this Plan.  For the avoidance of down, and notwithstanding any non-bankruptcy law, the holders of any Equity Interest in the Debtors shall neither receive nor retain any equitable rights or interests whatsoever.

**D.**     *Corporate Action.*

Upon the Effective Date, the Wind Down Officer shall replace all employees, officers, managers, and directors of all governing bodies for all Debtors.  Any and all actions contemplated under the Plan shall be deemed authorized and approved in all respects.  From and after the Effective Date, the Wind Down Officer shall have sole and absolute authority to perform all matters required under the Plan on behalf of the Debtor, including: (i) distributions to the Prepetition Secured Lender in accordance with the terms of this Plan; (ii) management of any bank accounts to establish, fund, and make payments from, the Administrative Claim Reserve and the Priority Claim Reserve in accordance with the provisions of this Plan; (iii) retention of Armanino LLP to prepare and file final tax returns for the Debtors; (iv) any and all other tasks which the Wind Down Officer determines to be necessary to administer the Plan and the transactions contemplated herein.  Any corporate action required by or in connection with the Plan, shall be deemed to have occurred and shall be in effect without any requirement of further action by any Equity Interest holders, directors, officers or managers of the Debtors. The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under non-bankruptcy law.

**E.**     *Retained Causes of Action.*

Except as otherwise provided in this Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court (including, but not limited to, the Sale Order, the TreeMac Stipulation, or DIP Order), pursuant to sections 363(b) and 1123(b)(3) of the Bankruptcy Code, the Debtors reserve and, as of the Effective Date, assign to the Prepetition Secured Lender, consistent with ARTICLE IV.B of the Plan, the Retained Causes of Action.  On and after the Effective Date, the Prepetition Secured Lender or its designee may pursue Retained Causes of Action in satisfaction of the Prepetition Secured Lender Claim.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the

4881-9366-8033

Prepetition Secured Lender will not pursue any and all available Retained Causes of Action against it. Unless any Retained Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Debtors expressly reserve all Retained Causes of Action for later adjudication by the Prepetition Secured Lender, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of Plan confirmation or occurrence of the Effective Date.

## F.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Debtors and the CRO are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

## G.    *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to this Plan; (b) the release or assignment of liens; (c) the transfer of any assets of the Debtors' Estates to the Prepetition Secured Lender; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, in connection with or pursuant to this Plan, including any restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing.

## ARTICLE VII
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## EFFECTIVENESS OF PLAN

## A.    *Conditions to Confirmation of Plan.*

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(a)    An order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered; and

(b)    The Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtors and the Prepetition Secured Lender.

4881-9366-8033

**B.**    ***Conditions to Effective Date of Plan.***

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

(a)    The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto;

(b)    Closing of the Sale; and

(c)    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

Within two (2) Business Days of the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date and the Administrative Claim Bar Date and serve the same on all creditors and parties in interest.

**C.**    ***Waiver of Conditions Precedent.***

Any of the foregoing conditions (with the exception of the conditions set forth in ARTICLE VII.A(b) and ARTICLE VII.B(a)) may be waived by agreement of the Debtors and the Prepetition Secured Lender without notice to or order of the Bankruptcy Court. The failure to satisfy or waive any condition may be asserted by the Debtors and the Prepetition Secured Lender regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors and the Prepetition Secured Lender). The failure of the Debtors and the Prepetition Secured Lender to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

**D.**    ***Effect of Failure of Conditions.***

If the foregoing conditions have not been satisfied or waived in the manner provided in ARTICLE VII.B and ARTICLE VII.C hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (vi) this Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the master service list maintained in the Chapter 11 Cases.

4881-9366-8033

**E.**    ***Reservation of Rights.***

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, neither the filing of the Plan, any statement or provision contained in the Plan, nor action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

<u>**ARTICLE VIII**</u>
**EFFECT OF CONSUMMATION**

**A.**    ***Revesting of Assets.***

(a)    On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Estates' Assets (other than the Retained Causes of Action transferred to the Prepetition Secured Lender pursuant to ARTICLE IV.B and ARTICLE VI.E of this Plan) shall vest in the Debtors, free and clear of all Claims, Liens, encumbrances, charges and other interests, except (i) as otherwise provided in this Plan and (ii) the liens and security interests granted to the Prepetition Secured Lender under its loan documents and under the DIP Order.

(b)    Notwithstanding the foregoing, on and after the Effective Date, the Debtors (by and through their Wind Down Officer) shall be authorized, but not directed, to abandon any remaining Assets that are not necessary to implement the terms and provisions of this Plan.  The Debtors (by and through their Wind Down Officer) shall further be authorized, but not directed, to abandon or destroy, or cause to be abandoned or destroyed, any books and records not taken by the Purchaser under the terms of the APA and Sale Order or otherwise provided to the Prepetition Secured Lender pursuant to this Plan.

**B.**    ***Exculpation.***

Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any holder of a Claim or Equity Interest, or any other party in interest, for any claim or cause of action arising from, relating to, or connected with the administration of the Chapter 11 Cases, the Sale, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the occurrence of the Effective Date, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.  The Exculpated Parties shall be deemed to have, participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code.  Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

4881-9366-8033

**C.      *Releases by the Debtors.***

On the Effective Date, unless expressly preserved under ARTICLE VI.E of this Plan, the Debtors shall fully and forever release, acquit, discharge and dismiss any and all claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, and each of their respective present or former members, principals, managers, officers, directors, employees, partners, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.  As set forth more fully in ARTICLE II.A of this Plan, the Debtors and the DIP Lender shall be deemed to have released one another from any and all rights, obligations, and defenses arising or related in any way to the DIP Order and the DIP Facility Claim and after the Petition Date. For the avoidance of doubt, nothing in this Article VIII.C shall release or effect any direct claim or cause of action held by the Prepetition Secured Lender.

**D.      *Injunction and Stay.***

(a)      From and after the Effective Date, and except as otherwise expressly provided in this Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Estates, or other entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors' Estates with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors' Estates, or against the property or interests in property of any of the Debtors' Estates, as applicable with respect to any such Claim or Equity Interest, except as to any liens or security interests held by the Prepetition Secured Lender which existed as of the Petition Date or granted after the Petition Date, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Debtors' Estates, or against the property or interests in property of any of the Debtors' Estates with respect to any such Claim or Equity Interest except as provided in this Plan, or (v) pursuing any Claim released or exculpated under the Plan. For the avoidance of doubt, nothing in this Article VIII.C shall enjoin or stay any direct claim or cause of action held by the Prepetition Secured Lender.

(b)      Each holder of a Claim or Equity Interest shall be bound by the injunction provisions set forth in this Section.  The Debtors or the Exculpated Parties shall be entitled to seek sanctions by motion for contempt or other appropriate proceeding for any violations of the Confirmation Order or this Plan, including the Exculpation, Injunction and Stay, and Gate Keeping provisions set forth in this Plan.

(c)      Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

4881-9366-8033

### E.    *Gate Keeping.*

No Person or Entity may commence or pursue a claim or cause of action of any kind against the Debtors or any Exculpated Party that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a claim or cause of action subject to the Sections B, C, and D of this ARTICLE VIII, including any claim or cause of action that was asserted or assertable on behalf of the Debtor, including any derivative, alter ego, successor liability, or similar claims and Causes of Action based on general harm to the Debtor, holders of Claims and Equity Interests, or any other party in interest, or a theory of lack of separation between the Debtors and an Exculpated Party, without the Bankruptcy Court (i) first determining, upon motion that attaches a copy of the proposed complaint or petition, and after notice and a hearing, that such claim or cause of action represents a direct (as opposed to derivative) and colorable claim of any kind and (ii) specifically authorizing such Person to bring such claim or cause of action against the Debtors or any Exculpated Party.  At the hearing on such motion, the Bankruptcy Court shall have sole and exclusive jurisdiction to assess whether the proposed complaint or petition satisfies the applicable Federal Rules of Civil Procedure (or other applicable rules of procedure) and to determine whether such claim or cause of action represents a colorable claim of any kind. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by applicable law. For the avoidance of doubt, the provision of this Article VIII.E shall not apply to the commencement or filing of any direct claim or cause of action against any non-Debtor, entity or person by the Prepetition Secured Lender.

### F.    *Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claim or Equity Interest any rights to payment that any of the Debtors may have against the holder of such Claim or Equity Interest. Neither the failure of the Debtors to setoff or recoup, nor the Allowance of any Claim or Equity Interest shall constitute a waiver or release by any of the Debtors of any right to payment or right of setoff or recoupment.

### G.    *Compromise of Controversies.*

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

### H.    *Rejection of Contracts and Leases.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date,

each Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease rejections described above, as of the Effective Date.  The rejections set forth in this Section H shall include rejecting any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, or other organizational documents and agreements to indemnify any officers or directors of the Debtors for any prepetition actions or failures to act.

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)      To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)      To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date or that are retained and preserved by the Debtors herein;

(c)      To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are effected as provided in the Plan;

(d)      To hear and determine any timely objections to Administrative Claims or to proofs of Claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest;

(e)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)      To take any action and issue such orders, after the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan or any prior order of the Bankruptcy, or to maintain the integrity of the Plan, the Sale, or any prior order entered by the Bankruptcy Court during these Chapter 11 Cases;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Professional Fee Claims;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder;

(m)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(n)     To enter a Final Decree closing the Chapter 11 Cases.

## ARTICLE X
## MISCELLANEOUS

*A.      Filing of Additional Documents.*

The Debtors or the Wind Down Officer may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

*B.      Schedules, Exhibits and Plan Supplement Incorporated.*

All exhibits and schedules to the Plan, if any, and the documents contained in the Plan Supplement, if any, are incorporated into and are a part of the Plan as if fully set forth herein.

*C.      Amendment or Modification of the Plan.*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to or after the entry of the Confirmation Order. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests

were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

**D.      *Inconsistency.***

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**E.      *Expedited Tax Determination.***

The Debtors or the Wind Down Officer may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

**F.      *Binding Effect.***

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**G.      *Severability.***

If the Bankruptcy Court determines that any provision of this Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors may modify this Plan in accordance with ARTICLE XC hereof so that such provision shall not be applicable to the holder of any Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of this Plan; or (ii) require the resolicitation of any acceptance or rejection of this Plan unless otherwise ordered by the Bankruptcy Court.

**H.      *No Admissions.***

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against, or any interests in, any Debtor, (b) prejudice in any manner the rights of any Debtor or any other party in interest, or (c) constitute an admission of any sort by any Debtor or other party in interest.

**I.      *No Payment of Attorneys' Fees.***

Except for the Professional Fee Claims of Professional Persons and the fees and costs of the Prepetition Secured Lender and the DIP Lender, no attorneys' fees shall be paid by the Debtors

21

4881-9366-8033

with respect to any Claim or Equity Interest unless otherwise specified in this Plan or a Final Order of the Bankruptcy Court.

**J.**     *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

HARNEY PARTNERS
Attention: Karen Nicolaou
Chief Restructuring Officer for *Cottonwood
Financial Ltd., et al.*
3500 Maple Avenue, Suite 350
Dallas, TX 75219
Telephone: (469) 445-1002
Email:knicolaou@harneypartners.com

with a copy to:

GRAY REED
Attention: Jason S. Brookner
Aaron M. Kaufman
Lydia R. Webb
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:jbrookner@grayreed.com,
akaufman@grayreed.com
lwebb@grayreed.com

**K.**     *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

4881-9366-8033

Dated: June 14, 2024
Dallas, Texas

**COTTONWOOD FINANCIAL LTD.**

By: */s/ Karen Nicolaou*
    Karen Nicolaou, Chief Restructuring Officer

**COTTONWOOD FINANCIAL
ADMINISTRATIVE SERVICES, LLC**

By: *//s/ Karen Nicolaou*
    Karen Nicolaou, Chief Restructuring Officer

**COTTONWOOD FINANCIAL TEXAS, LLC**

By: */s/ Karen Nicolaou*
    Karen Nicolaou, Chief Restructuring Officer

**COTTONWOOD FINANCIAL IDAHO, LLC**

By: */s/ Karen Nicolaou*
    Karen Nicolaou, Chief Restructuring Officer

**COTTONWOOD FINANCIAL WISCONSIN, LLC**

By: */s/ Karen Nicolaou*
    Karen Nicolaou, Chief Restructuring Officer

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Lydia R. Webb (TX Bar No. 24083758)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:      jbrookner@grayreed.com
          akaufman@grayreed.com
          lwebb@grayreed.com

*Counsel to the Debtors
and Debtors in Possession*

4881-9366-8033